**Paige M. JOYNER, Plaintiff,**

v.

**H. Lawrence GARRETT, III, Secretary, Department of the Navy, Agency, Defendant.**

**Civ. A. No. 90–92–N.**

United States District Court, E.D. Virginia, Norfolk Division.

Nov. 26, 1990.

Theodore A. Boyce, Virginia Beach, Va., for plaintiff.

J. Phillip Krajewski, Asst. U.S. Atty., Norfolk, Va., and Ray T. Lee, Major U.S. Marine Corps, Dept. of the Navy, Arlington, Va., for defendant.

## OPINION AND ORDER

REBECCA BEACH SMITH, District Judge.

This matter comes before the court on Defendant's Motion to Dismiss or in the Alternative, for Summary Judgment. Because the court will consider matters outside the pleadings, defendant's motion to dismiss under Rule 12(b)(6) is "treated as one for summary judgment and disposed of as provided in Rule 56." Fed.R.Civ.P. 12(c). Under Rule 56, summary judgment is improper unless there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Upon due consideration, following argument of counsel and submission of briefs and relevant material, the court DENIES defendant's motion for summary judgment on plaintiff's Title VII claim.

### I. Facts

Plaintiff, Paige Joyner, brings this action against her federal employer, the Department of Navy (hereinafter referred to as "the Navy"), alleging that the Navy unlawfully discriminated against her on the basis of her religion in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.* (1981 & Supp. 1990). The suit arose from the Navy's discharge of plaintiff for alleged assaultive and disruptive behavior.

Plaintiff, a "born-again Christian," was employed as a packer, WG–4, at the Naval Supply Center in Norfolk, Virginia. The reason for plaintiff's discharge was "repeated disruptive and bizarre behavior,"[1] which culminated in a March 29, 1988, confrontation with a co-worker, Levi Carson. On or about March 29, 1988, plaintiff approached Mr. Carson and swung at him with her handbag, allegedly striking him. Then, plaintiff placed her hands around Mr. Carson's throat and allegedly began to choke him. *See Joyner v. Garrett*, Civil Action No. 90–92–N, Memorandum in Support of Defendant's Motion to Dismiss or for Summary Judgment at 3, and Exhibit B (E.D.Va. April 30, 1990) (hereinafter referred to as "Defendant's Memorandum"). Although plaintiff denies that her handbag actually hit Mr. Carson and that she tried to choke him, plaintiff admits that she desired to injure Mr. Carson. Defendant's Memorandum, Exhibit C at 1, 2 (plaintiff's statements); Exhibit F at 4, 5 (administrative judge's findings). Instead of choking Mr. Carson, plaintiff claims that she placed her hands under his cheeks and was praying for him. *See* Defendant's Memorandum, Exhibit C at 2; Exhibit I at 2. Furthermore, plaintiff defends her actions as being provoked by Mr. Carson whom, she claims, is a member of a satanic cult. Defendant's Memorandum, Exhibit C at 1. Specifically, plaintiff claims that Mr. Carson placed a curse on her, from which she was supposed to die. Defendant's Memorandum, Exhibit C at 1.

Plaintiff's removal from employment at the Naval Supply Center was proposed on May 6, 1988, at which time the Navy continued plaintiff's nonduty with pay status pending agency action. *See* Defendant's

---

1. In support of its allegation of "repeated disruptive and bizarre behavior," the Navy cited plaintiff's "speaking in tongues, rebuking her co-workers in the name of Jesus and pouring holy oil on the floor and around equipment."

*Joyner v. Garrett*, Civil Action No. 90–92–N, Memorandum in Support of Defendant's Motion to Dismiss or for Summary Judgment at 2–3 (E.D.Va. April 30, 1990).

Memorandum, Exhibit A. Plaintiff initially was relegated to this status on April 4, 1988. Defendant's Memorandum, Exhibit A. After being afforded an opportunity to respond to her proposed removal, plaintiff was notified of her removal, effective June 24, 1988. Defendant's Memorandum, Exhibit E.

Plaintiff appealed her discharge on July 5, 1988, to an administrative judge who sat as the initial decision maker for the Merit Systems Protection Board (hereinafter referred to as "MSPB"). On November 1, 1988, the administrative judge affirmed the Navy's decision to discharge plaintiff. *See* Defendant's Memorandum, Exhibit F. The administrative judge informed plaintiff that his decision constituted the initial decision of the MSPB and it was subject to further MSPB review, if plaintiff so desired and petitioned for such review by December 7, 1988. Defendant's Memorandum, Exhibit F at 12–13. In the event no such petition was filed, plaintiff was informed that this initial decision would become the final decision of the MSPB. Additionally, plaintiff was made aware of other avenues of review, should she desire review by the Equal Employment Opportunity Commission (hereinafter referred to as "EEOC") or the federal courts. Specifically, plaintiff was told that EEOC review or federal court review could be petitioned for if initiated within thirty calendar days after the date that the initial decision of the MSPB became final. *See* Defendant's Memorandum, Exhibit F at 13, 14.

Prior to December 7, 1988, plaintiff petitioned the MSPB and the EEOC for review. Both petitions were filed on December 1, 1988. Defendant's Memorandum, Exhibit H; *Joyner v. Garrett*, Civil Action No. 90–92–N, Defendant's Supplemental Memorandum in Support of Defendant's Motion

to Dismiss or for Summary Judgment, Exhibit A (E.D.Va. Sept. 14, 1990) (hereinafter referred to as "Defendant's Supplemental Memorandum"). Plaintiff's petition for MSPB review was returned for failing to serve a copy of the petition on the Navy and for failing to include a certificate of service of her petition on the Navy. *See* Defendant's Memorandum, Exhibit H. Plaintiff was instructed to perfect her petition for MSPB review within fifteen days of the date of the letter notice returning it, or else the initial decision would become the final decision of the MSPB. Defendant's Memorandum, Exhibit H.[2] The MSPB's letter notice returning the petition was dated December 13, 1988. *See* Defendant's Memorandum, Exhibit H. Plaintiff resubmitted no perfected petition for review with the MSPB. Thus, the initial decision became the final decision of the MSPB on December 28, 1988. Defendant's Memorandum at 6.

Plaintiff's December 1, 1988, petition for EEOC review also was rejected. In a letter dated January 5, 1989, the EEOC informed plaintiff that her petition was dismissed without prejudice as premature, because plaintiff's appeal was still pending before the MSPB. Defendant's Memorandum, Exhibit G.

■ On August 24, 1989, plaintiff again petitioned the EEOC for review of the final MSPB decision. *See* Defendant's Memorandum, Exhibit I at 1. The Navy claims it received no notice of this petition until it received, on January 5, 1990, a copy of the EEOC decision. *See* Defendant's Supplemental Memorandum, Exhibit B (declaration of then Labor Relations Specialist, Elsie Wilson).[3] In a decision on the merits dated December 21, 1989, and received by

---

**2.** Title 5 U.S.C. § 7701(e)(1), and 5 C.F.R. § 1201.113(d), in conjunction with 5 C.F.R. § 1201.114, permit the MSPB to extend the time limit for filing a petition for MSPB review of the initial decision when "good cause" exists. *See infra* at 561.

**3.** Plaintiff apparently argues that the Navy's knowledge of plaintiff's initial petition with the

EEOC serves as notice of plaintiff's subsequent action. *See Joyner v. Garrett*, Civil Action No. 90–92–N, Plaintiff's Memorandum in Response to Defendant's Supplemental Memorandum in Support of Defendant's Motion to Dismiss or for Summary Judgment at 2 (E.D.Va. Oct. 1, 1990) (hereinafter referred to as "Plaintiff's Supplemental Response"). The court disagrees with this position. *See infra* note 14.

plaintiff after January 3, 1990,[1] the EEOC concurred with the final decision of the MSPB. *See Joyner v. Garrett*, Civil Action No. 90–92–N, Plaintiff's Memorandum in Response to Defendant's Motion to Dismiss or for Summary Judgment, Exhibit at 4 (E.D.Va. June 11, 1990) (hereinafter referred to as "Plaintiff's Memorandum"). On February 1, 1990, plaintiff filed her complaint with this court.

Defendant asserts two grounds to support this motion for summary judgment: 1) plaintiff's failure to timely appeal her discharge pursuant to the statutory scheme set forth in 5 U.S.C. §§ 7702 and 7703; and 2) plaintiff's failure to allege facts that constitute a violation of Title VII, 42 U.S.C. § 2000e–16.

## II. *Plaintiff's Untimeliness*

 Defendant contends that this court is precluded from considering plaintiff's claim, because plaintiff failed to appeal her discharge within thirty days after the initial decision of the MSPB became final. Title 5 U.S.C. § 7702(b)(1) permits EEOC review of final MSPB "mixed case" decisions. A "mixed case" is one in which an employee alleges that unlawful discrimination was a motivating factor in the personnel action being appealed. 29 C.F.R. § 1613.402; *Ballard v. Tennessee Valley Auth.*, 768 F.2d 756, 757 (6th Cir.1985); *Bartlett v. United States Postal Serv.*, 25 M.S.P.R. 317 (1984). Because plaintiff alleges that religious discrimination was a motivating factor in her dismissal, this case is a mixed case over which the EEOC had jurisdiction. Title 5 U.S.C. § 7703(b)(2), by reference to 42 U.S.C. § 2000e–16(c), permits judicial review of a final MSPB decision in mixed cases by a United States district court.

Section 7702(b)(1) provides that "[a]n employee ... may, within 30 days after notice of the decision of the Board [MSPB final decision] ... petition the Commission [EEOC] to consider the decision." Thus, pursuant to section 7702(b)(1), if plaintiff

desired EEOC review of the final MSPB decision, she should have filed a petition for such by January 27, 1989.

Section 7703(b)(2) provides, in part, that "[n]otwithstanding any other provision of law, any such case filed under ... [42 U.S.C. § 2000e–16(c)] must be filed within 30 days after the date the individual filing the case received notice of the judicially reviewable action under ... section 7702." Thus, this court must determine what is a judicially reviewable action and when did plaintiff's action become judicially reviewable. Pursuant to the scheme established by sections 7702 and 7703, there are six different types of decisions during the administrative process that are judicially reviewable in federal district court: 1) the agency's decision, if no appeal is filed with the MSPB, 5 U.S.C. § 7702(a)(2); 2) the MSPB decision, if no review by the EEOC is sought, 5 U.S.C. § 7702(a)(3)(A); 3) the EEOC's refusal to review the MSPB decision, 5 U.S.C. § 7702(a)(3)(B); 4) the EEOC's concurrence in the MSPB's decision, 5 U.S.C. § 7702(b)(5)(A); 5) the MSPB's adoption on remand of the EEOC's position, 5 U.S.C. § 7702(c); and 6) the special panel's decision, which is necessitated by the MSPB's refusal to adopt on remand the EEOC's position, 5 U.S.C. § 7702(d)(2)(A). *See Ballard*, 768 F.2d at 759, n. 8.

Thus, an aggrieved individual must petition for judicial review within thirty days after receiving notice of any of the above six actions. Accordingly, plaintiff's case became judicially reviewable on two occasions: when plaintiff received notice of the final MSPB decision, which became final on December 28, 1988, and when plaintiff received notice of the EEOC's concurrence in the MSPB decision, which was rendered on December 21, 1989.

If, as plaintiff asserts, the task for this court, with respect to the section 7703 timeliness issue, is to consider only the time interval between plaintiff's receipt of the EEOC's concurrence and the filing of this

---

**4.** *See Joyner v. Garrett*, Civil Action No. 90–92–N, Plaintiff's Memorandum in Response to Defendant's Motion to Dismiss or for Summary Judgment at 1 (E.D.Va. June 11, 1990). Defendant has not challenged this assertion.

action in federal court, then plaintiff's filing is undeniably timely. Plaintiff received notice of the EEOC decision after January 3, 1990, and filed this action on February 1, 1990. However, this conclusion divorces section 7703(b)(2) from section 7702(b)(1). This was not the intent of Congress: sections 7702 and 7703 are designed to interact as a scheme.[5] "Although by no means a model of clarity, these code provisions, when read together, support the conclusion that an employee who is dissatisfied with the MSPB's disposition of the case must take some action within thirty days." *Halus v. United States Dep't of the Army*, No. 87–4133, 1988 WL 48565 (E.D.Pa. May 16, 1988) (LEXIS, Employ library, Fedcas file). The *Halus* court stated that "[a]n aggrieved employee may not, for example, appeal to the EEOC forty days after notice from the MSPB, await the EEOC's rejection of his petition as untimely, then file suit in district court based on the EEOC's determination not to consider the claim." *Id.; see also Birch v. Lehman*, 677 F.2d 1006 (4th Cir.1982), *cert. denied*, 459 U.S. 1103, 103 S.Ct. 725, 74 L.Ed.2d 951 (1983).[6]

■ In the present case, plaintiff failed to take proper, timely action following the MSPB final disposition of her case. The MSPB decision became final on December 28, 1988. Pursuant to sections 7702(b)(1)

and 7703(b)(2), plaintiff, between December 28, 1988 and January 27, 1989, had the option of petitioning for review by the EEOC or the appropriate federal district court. Plaintiff did neither. Thus, plaintiff's action now before this court was not filed within the time limitations of sections 7702 and 7703.[7]

■ This court agrees with defendant's assertion that, consistent with *Halus* and *Birch*, plaintiff's mere petition for EEOC review does not operate to revive an otherwise stale claim. However, the present case is distinguishable from *Halus* and *Birch*. In the present case, the EEOC decided plaintiff's case on the merits, rather than summarily dismissing her petition as untimely. The court finds this distinction significant. The EEOC's decision to hear the merits of plaintiff's case apparently excuses plaintiff's untimeliness pursuant to section 7702(b)(1). The question becomes whether the EEOC has the authority to excuse plaintiff's untimeliness. If the EEOC has the authority to excuse plaintiff's noncompliance with the time limitation of section 7702(b)(1), then, assuming a legitimate reason for such excuse exists, this action now before the court is not stale.

**5.** Evidence of Congress's intent that sections 7702 and 7703 be read together is inferred from their consecutive placement in the Civil Service Reform Act of 1978, Pub.L. No. 95–454, 92 Stat. 1111 (1978), and section 7703(b)(2)'s direct reference to section 7702.

**6.** In *Birch v. Lehman*, plaintiff appealed the district court's dismissal of her Title VII claim for untimely filing. Plaintiff received a decision from the EEOC on her discrimination complaint on October 23, 1980. Notwithstanding that at that time plaintiff was told that the October 23, 1980, decision was the final EEOC decision from which she had thirty days to file suit in federal court, plaintiff requested EEOC reconsideration. Plaintiff's request for reconsideration was denied on May 18, 1981. Within thirty days of the EEOC's rejection of plaintiff's request for EEOC reconsideration, on June 17, 1981, plaintiff filed her civil action in district court. *Birch*, 677 F.2d at 1007. The district court dismissed plaintiff's complaint, because plaintiff failed to file her lawsuit within thirty days of the final EEOC decision, which plaintiff received on October 23, 1980. *Id.* at 1008. The

Fourth Circuit held that it was insufficient that plaintiff filed her civil action in district court within thirty days of the EEOC's denial for reconsideration. The Fourth Circuit reasoned, "[a]ccepting appellant's position would mean that no decision by the EEOC could be regarded with certainty as a 'final action' since a plaintiff could revive his claim at any time, merely by requesting reconsideration. Such a result would render the statutory 30–day requirement meaningless." *Id.* at 1008.

**7.** The time limitation of section 7703(b)(2) necessarily implicates the time limitation of section 7702(b)(1), when a party seeks EEOC review prior to seeking judicial review, as this plaintiff (Joyner) did. As the text of section 7703(b)(2) makes clear, judicial review under section 7703(b)(2) is predicated on the action being judicially reviewable pursuant to section 7702. Thus, the court's decision as to whether to excuse plaintiff's untimeliness in filing her civil action under section 7703(b)(2) requires the court to decide whether the EEOC had reason to excuse plaintiff's noncompliance with the time limitation of section 7702(b)(1).

The EEOC's role in processing mixed case complaints is delineated in 29 C.F.R. §§ 1613.401–421. Nowhere in these sections is the EEOC expressly granted or denied the discretion to excuse a petitioner's untimeliness in seeking EEOC review of a final MSPB decision pursuant to section 7702(b)(1).[8] In the absence of clear language, the court must decide what is consistent with the scheme established by Congress to resolve Title VII claims.

This court finds no valid reason to treat the time limitation of section 7702(b)(1) differently from the other time limitations governing appeals of adverse employment decisions set forth in 5 U.S.C. §§ 7701, 7702, and 7703. Section 7701, which governs appeals to the MSPB from its initial decision, by its language affords the MSPB discretion to extend that thirty-day limitation period. *See* 5 U.S.C. § 7701(e)(1). Section 7703(b)(2), however, is similar to section 7702(b)(1), in that its language grants no such discretion. *See supra* at 559. Instead, the courts have clearly interpreted that time limitation to be nonjurisdictional and equivalent to a statute of limitations. *See, e.g., Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982); *Johnson v. Burnley*, 887 F.2d 471, 478 (4th Cir.1989) (extrapolating *Zipes* to cover federal employees).[9]

■ Accordingly, this court concludes that the time limitation of section 7702(b)(1)

should be treated the same as the time limitation of section 7703(b)(2), namely as a statute of limitations subject to the equitable doctrines of tolling, estoppel, and waiver.[10] Thus, the EEOC has the authority to excuse plaintiff's noncompliance with section 7702(b)(1), and this court will not disturb the EEOC's excuse of plaintiff's untimeliness in this case, if there is a legitimate reason to support that determination.[11]

■ The doctrine of equitable tolling generally is invoked only upon a showing that the employee's untimely filing results from wrongful deception or misinformation designed to cause the employee to delay his or her filing. *Olson v. Mobil Oil Corp.*, 904 F.2d 198, 201 (4th Cir.1990). Plaintiff never has alleged, nor does the record before the court indicate, that she ever was deliberately deceived or misinformed. Thus, plaintiff has failed to demonstrate the propriety of equitable tolling in this case.

■ Furthermore, plaintiff has failed to meet the burden imposed by the Fourth Circuit with respect to estoppel. Equitable estoppel against the government requires at least a showing of "affirmative misconduct on the part of the government." *Zografov v. V.A. Medical Center*, 779 F.2d 967, 969 (4th Cir.1985). No affirmative misconduct on the part of the government has been alleged, nor is there any indication of such in the record.[12] Plaintiff re-

---

**8.** Although 29 C.F.R. § 1613.416, on its face, appears to afford the EEOC discretion to consider a petition regardless of its timeliness, 45 Fed.Reg. 50,326 (July 29, 1980) explains that the intent of that section is to afford the EEOC such discretion when the petition is timely filed.

**9.** Among the compelling reasons why the courts have found administrative deadlines governing Title VII claims to be nonjurisdictional is an understanding that such requirements should not obscure Title VII's purpose of rooting out employment discrimination in the federal government. *See Brown v. Marsh*, 777 F.2d 8, 14 (D.C.Cir.1985).

**10.** The party seeking equitable relief bears the burden of showing that the circumstances so warrant. *See Saltz v. Lehman*, 672 F.2d 207 (D.C.Cir.1982); *Dewitt v. United States*, 593 F.2d 276, 281 (7th Cir.1979).

**11.** Defendant seeks an automatic dismissal by this court because of plaintiff's untimely filing for EEOC review of the MSPB final decision. A reviewing court should not automatically and retroactively do what the EEOC should do if it is so compelled, that is, dismiss a claim as untimely. Rather, if the EEOC acts upon the merits of an untimely claim, apparently excusing noncompliance with section 7702(b)(1), and the plaintiff then files for *judicial review*, the reviewing court then must so act as such, namely review the EEOC actions of excusing the untimeliness and considering the merits of the claim.

**12.** Although plaintiff does not allege affirmative government misconduct, she does accuse the EEOC of being at least ambiguous with respect to the consequences of the first petition for review that was dismissed without prejudice as premature. In fact, plaintiff argues that the

ceived express, understandable notification of the procedures governing review of the MSPB decision.[13]

■ With respect to the issue of waiver, defendant contends that the Navy has not waived the time limitations of sections 7702 and 7703. Defendant's Supplemental Memorandum at 5. Specifically, defendant documents that the Navy received no notice of the EEOC proceeding until the Navy received a copy of the EEOC's December 21, 1989, decision. *See* Defendant's Supplemental Memorandum, Exhibit A (affidavit of EEOC's Director of Compliance and Control Division, Office of Review and Appeals); Exhibit B (declaration of Labor Relations Specialist at Naval Supply Center, Norfolk, Virginia). Thus, defendant argues that the Navy, having no opportunity to enter an appearance or an objection to the EEOC's review, certainly did not waive the time limitation to such an action.[14] This court does not question the accuracy of these contentions, but defendant's argument fails to comprehend the scope of the waiver exception.

Borrowing from decisions in the context of untimely appeals to the MSPB from its

---

letter conveyed a message contrary to what defendant claims was intended. *See* Plaintiff's Supplemental Response at 1–2. The court agrees with plaintiff's assessment of that EEOC letter. The court finds that the letter, taken as a whole, is confusing. Although the confusion created by the letter does not rise to "affirmative misconduct" to justify estoppel, it is an integral factor behind the court's decision with respect to waiver. *See infra* at 563.

**13.** *See* Defendant's Memorandum, Exhibit F at 12–14. At the end of the initial MSPB decision, plaintiff received the following:

NOTICE TO APPELLANT

This initial decision will become final on *07 DEC 1988,* unless a petition for review is filed by that date or the Board reopens the case on its own motion. This is an important date because it is the last day on which you can file a petition for review with the Board. The date on which the initial decision becomes final also controls when you can file a petition for review with the Equal Employment Opportunity Commission (EEOC) or with a federal court. The paragraphs that follow tell you how and when to file with the Board, the EEOC, or the federal courts. These instructions are important because if you wish to file a petition, you must file it within the proper time period.

BOARD REVIEW

You may request Board review of this initial decision by filing a petition for review. Your petition for review must state your objections to the initial decision, supported by references to applicable laws, regulations, and the record. You must file your petition with:

The Clerk of the Board
*Merit Systems Protection Board*
1120 Vermont Avenue, N.W., Suite 802
Washington, D.C. 20419

. . . .

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION REVIEW

If you disagree with the Board's final decision on discrimination, you may obtain further administrative review by filing a petition with the EEOC no later than 30 calendar days

after the date this initial decision becomes final. The address of the EEOC is:

Office of Review and Appeals
Equal Employment Opportunity Commission
5203 Leesburg Pike, Suite 900
Falls Church, Virginia 22041
JUDICIAL REVIEW

If you do not want to file a petition with the EEOC, you may ask for judicial review of both discrimination and nondiscrimination issues by filing a petition with the appropriate United States District Court no later than 30 calendar days after this initial decision becomes final.

Defendant's Memorandum, Exhibit F at 12–14. When the MSPB returned plaintiff's petition for review for not serving a copy of such on defendant and for not attaching with the petition a certificate of service on defendant, plaintiff received the following notice:

If you want the Board to consider your petition for review, you must return it, with all deficiencies corrected, within 15 days of the date of this notice. . . . If your petition is not timely refiled and you do not show good cause for your delay, or if you do not refile your petition, the initial decision is the final decision of the Board. Any further right of appeal must be pursued in accordance with the instructions in that initial decision.

Defendant's Memorandum, Exhibit H.

**14.** As mentioned previously, *see supra* note 3, plaintiff apparently argues that the Navy had notice of plaintiff's action before the EEOC and waived any objection to the action. The court disagrees with plaintiff. The affidavit of Richard A. Reda, the Director of Compliance and Control Division for the Office of Review and Appeals of the EEOC, and the declaration of Elsie Wilson, the former Labor Relations Specialist at the Naval Supply Center, Norfolk, Virginia, show that the Navy had no knowledge of plaintiff's second petition with the EEOC until after the EEOC rendered its decision. *See* Defendant's Supplemental Memorandum, Exhibit A; Exhibit B. Knowledge of one action does not serve as knowledge of a second action.

initial decision, waiver requires a showing of "good cause" for the untimely filing. *See Shiflett v. United States Postal Serv.,* 839 F.2d 669, 672 (Fed.Cir.1988); *Harjo v. United States Postal Serv.,* 43 M.S.P.R. 336 (1990); *Alonzo v. Department of the Air Force,* 4 MSPB 262, 4 M.S.P.R. 180 (1980). The question for this court is whether, viewing the relevant facts in the light most favorable to plaintiff, good cause existed for the EEOC to excuse plaintiff's untimely filing pursuant to section 7702.[15] Good cause requires an exercise of due diligence or ordinary prudence under the circumstances. *See, e.g., Harjo,* 43 M.S.P.R. at 338. The court finds that, viewing the facts in the light most favorable to the plaintiff, good cause existed for plaintiff's untimely filing pursuant to section 7702(b)(1).

The EEOC letter dated January 5, 1989, provides a source for plaintiff's "good cause." This letter conveyed to plaintiff that because her appeal was still pending with the MSPB for final adjudication, her petition for EEOC review was dismissed "without prejudice, as premature ... [and] hereby closed." Defendant's Memorandum, Exhibit G. This court's finding of good cause with respect to the letter is threefold. First, by defendant's own assertions, the MSPB decision became final on December 28, 1988. Defendant's Memorandum at 6. The EEOC letter rejecting plaintiff's petition for review was dated January 5, 1989. Thus, contrary to the EEOC letter, the reason given for the EEOC's dismissal of plaintiff's petition—that her "appeal is still pending with the Board for final adjudication," Defendant's Memorandum, Exhibit G—was not valid when the letter was sent. Second, the effect of the letter is ambiguous. On the one hand, the letter states that plaintiff's petition for EEOC review is dismissed without prejudice as premature. On the other hand, it states that plaintiff's petition is closed. Dismissal without prejudice im-

plies that the case may be refiled; plaintiff's petition being closed implies that refiling is not possible. Third, the EEOC letter of January 5, 1989, never conveyed to plaintiff whether her petition would automatically be reopened when plaintiff's appeal no longer was pending with the MSPB, or whether she needed to refile another petition.

In sum, the EEOC letter dated January 5, 1989, can be read to have unintentionally deterred plaintiff from making a timely filing for EEOC review pursuant to section 7702(b)(1), which, in turn, resulted in this untimely filing pursuant to section 7703(b)(2). The court, thus finding a source of "good cause," will not disturb the EEOC's waiver of the time limitation of section 7702(b)(1). Summary judgment on the basis of plaintiff's untimely filing is thereby improper.

## III. The Merits of Plaintiff's Claim

▇▇▇ Turning to the merits of plaintiff's claim, the undisputed material facts are that Joyner was discharged by the Navy, because the manifestation of her religious beliefs inspired her to attempt to inflict bodily injury on a co-worker and to engage in other disruptive behavior. Both sides agree that Joyner's conduct, which prompted her discharge, was assaultive—she tried to injure a co-worker. *See* Defendant's Memorandum, Exhibit C at 2 (plaintiff stated, "I think I wanted to hurt him [Mr. Carson]," in response to questions posed by Elsie Wilson, the Labor Relations Specialist assigned to investigate the confrontation with Mr. Carson); Exhibit F at 4 (administrative judge found "[a]ppellant [Joyner] admits swinging at Mr. Carson two times, with her purse. When she was swinging her purse, she admits that she was angry with Mr. Carson and wanted to hurt him...."). Furthermore, neither side disputes that plaintiff's assaultive and disruptive behavior was religiously motivated.[16]

---

15. "On summary judgment the inferences to be drawn from the underlying facts contained in such materials must be viewed in the light most favorable to the party opposing the motion."

*United State v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

16. Defendant has not challenged the assertion that plaintiff's conduct for which she was dis-

The legal question for this court is whether Title VII requires defendant to "accommodate" plaintiff's behavior, when such behavior is pursuant to a sincerely held religious belief, and, if so, to what extent.

Notwithstanding plaintiff's incorrect assertion, the operative substantive provision of Title VII with respect to this case is 42 U.S.C. § 2000e–16(a).[17] This provision prohibits discriminatory practices by the federal government in "military departments," which are defined by 5 U.S.C. § 102 as "[t]he Department of the Army[,] [t]he Department of the Navy[,] [and] [t]he Department of the Air Force." Included in "Department of the Navy" are women and men employed in civilian capacities. *See Johnson v. Alexander*, 572 F.2d 1219, 1224 (8th Cir.1978), *cert. denied*, 439 U.S. 986, 99 S.Ct. 579, 58 L.Ed.2d 658 (1978).

▬▬▬ Title VII does not require absolute deference by federal employers to the religious practices of its employees. "Religion," as used in 42 U.S.C. § 2000e–16 and protected from discrimination by Title VII, does not include those aspects of religious observance and practice as to which the "employer demonstrates that he is unable to reasonably accommodate ... without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j). An undue hardship exists when the employer would incur more than a *de minimis* cost by providing reasonable accommodation. *See Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 84, 97 S.Ct. 2264, 2277, 53 L.Ed.2d 113 (1977). The employer bears the burden of proving that the necessary accommodation would produce undue hardship. *Anderson v. General Dynamics*

*Convair Aerospace Div.*, 589 F.2d 397 (9th Cir.1978), *cert. denied*, 442 U.S. 921, 99 S.Ct. 2848, 61 L.Ed.2d 290 (1979). Furthermore, the duty to make a reasonable accommodation does not mean that an employer has to accommodate the employee, rather than discharge the employee, when the employee's performance is otherwise inadequate and the proposed accommodation would violate valid employer policies. *See Baz v. Walters*, 599 F.Supp. 614 (C.D. Ill.1984), *aff'd*, 782 F.2d 701 (7th Cir.1986).

The Navy has failed to meet its burden at this stage of the case. The record before the court is unclear as to whether the Navy has attempted to reasonably accommodate plaintiff's religious-based idiosyncracies. *See* 29 C.F.R. § 1605.2. A 1986 referral to the Civilian Employee Assistance Program and, apparently, a referral to a psychiatrist are the only accommodation efforts made by the Navy prior to plaintiff's dismissal.[18] Although the court is mindful that plaintiff's behavior was assaultive on one occasion and has impaired her working relationship with some of her co-workers,[19] more information is needed to decide whether plaintiff's dismissal was proper. Other alternatives should have been considered, such as a change in job assignments and a lateral transfer of the employee. *See* 29 C.F.R. § 1605.2(d)(iii). The record does not satisfy the court that such alternatives were considered by the Navy and, if considered, why they were ruled out. The court simply cannot determine at this stage of the proceedings whether a reasonable accommodation, without undue hardship or violation of valid

---

charged was religiously motivated. Rather, defendant argues that notwithstanding plaintiff's motivation, her discharge was proper. *See* Defendant's Memorandum at 11, 12; *Joyner v. Garrett*, Civil Action No. 90–92–N, Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss or for Summary Judgment at 6–7 (E.D.Va. June 20, 1990).

**17.** Plaintiff's complaint incorrectly alleges a violation of 42 U.S.C. § 2000e–2(a). Although that section prohibits unlawful employment practices, in general, 42 U.S.C. § 2000e–16 explicitly applies to employment by the federal government.

**18.** *See* Defendant's Memorandum, Exhibit A; Exhibit I at 4. The court notes, however, that the only evidence of a pre-discharge referral to a psychiatrist is a sentence in the EEOC's decision. *See* Exhibit I at 4.

**19.** Joyner's conduct evidently has instilled fear in her co-workers. Defendant's Memorandum, Exhibit B; Exhibit F at 7 (administrative judge's finding that plaintiff's supervisor and other co-workers fear plaintiff).

Navy policies, could have been or was made in plaintiff's case.

Finally, the court needs more information to determine whether plaintiff's discharge is consistent with penalties administered by the Navy in similar cases. *Blow v. Department of the Navy*, 11 M.S.P.R. 102 (1982), which defendant cites to show that discharge is not an unusual response to a workplace assault,[20] also establishes for the court that not all workplace assaults are disciplined the same. The circumstances of each incident must be fully examined to determine whether discharge or a less severe penalty is appropriate. In *Blow*, the MSPB sustained the Navy's removal of an employee who, on two instances, threatened to inflict bodily injury to a supervisor, and on another occasion, threatened to inflict bodily injury to a co-worker. *Id.* at 106. The MSPB distinguished the Blow incident from another incident involving an employee, Bellamy, who was suspended, rather than discharged, for a single spontaneous incident in which Bellamy pushed a fellow employee. *Id.* at 105–06. The court finds that the circumstances surrounding the Joyner incident are disputed such that it cannot conclude whether a Blow-type sanction (discharge) or a Bellamy-type penalty (suspension) was appropriate. For example, plaintiff disputes the gravity of her behavior. While the Navy contends that plaintiff earlier in the day attempted to hunt down Mr. Carson with a hammer, then later struck him with her purse and proceeded to choke him,[21] plaintiff asserts that she possessed the hammer for work-related reasons, never actually struck Mr. Carson with her purse, and was praying for Mr. Carson, rather than choking him.[22] Although the defendant is accurate in stating that religious inspiration does not immunize a workplace assault from discipline, neither should the fact that it is religiously inspired, by itself, result in a more severe sanction than otherwise would have been administered.

**20.** Defendant's Memorandum at 12.

**21.** Defendant's Memorandum, Exhibit B (Mr. Carson's statements).

*IV. Conclusion*

For the reasons set forth in this Opinion and Order, the court DENIES defendant's motion for summary judgment.

**22.** Defendant's Memorandum, Exhibit C at 2–3; Exhibit D at 2 (plaintiff's statements).