**Diane Y. ROWSON, Plaintiff,**

v.

**COUNTY OF ARLINGTON, VIRGINIA, Defendant.**

**Civ. A. No. 91–1619–A.**

United States District Court, E.D. Virginia, Alexandria Division.

March 19, 1992.

Marni Elaine Byrum, Arlington, Va., for plaintiff.

Peter H. Maier, Asst. County Atty., Arlington, Va., for defendant.

MEMORANDUM OPINION

CACHERIS, Chief Judge.

This matter is before the court on Defendant Arlington County's Motion to Dismiss or for Summary Judgment pursuant to Federal Rules of Civil Procedure 12(b)(6) and 56 on the grounds that the Complaint fails to state a claim upon which relief can be granted.

In order to resolve the Motion to Dismiss or for Summary Judgment as to Count II of the Complaint, the court must address an important issue that has been faced, or soon will be faced, by every federal court in the United States until it is resolved by the Supreme Court. This primary issue before the court is whether the provisions of the Civil Rights Act of 1991 apply retroactively to a case pending in federal court on November 21, 1991, the date of enactment. For the reasons discussed below, the Motion to Dismiss or for Summary Judgment is withdrawn as to Count I and denied as to Counts II and III.

I

*Background*

This is an employment discrimination action filed by Diane Rowson against Arlington County. Plaintiff Rowson is a black female who was employed by Arlington County as Bureau Chief, Family Health Services, Department of Human Services from September 5, 1989 until her termination on August 17, 1990. Plaintiff alleges that she was the victim of racially motivated action which culminated in her termination and replacement by a white female. She brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Count I), 42 U.S.C. § 1981 (Count II), and 42 U.S.C. § 1983 (Count III).

Defendant first argued in its Motion to Dismiss or for Summary Judgment that Plaintiff's claim under Title VII should be dismissed because Plaintiff did not file a timely charge with the Equal Employment Opportunity Commission ("EEOC"). A timely charge of discrimination with the EEOC is not, however, a jurisdictional pre-

requisite to suit in federal court. Like a statute of limitations, the filing requirement is subject to waiver, estoppel, and equitable tolling. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982).[1] Thus, in its Reply Memorandum and at oral argument, Defendant withdrew the Motion to Dismiss or for Summary Judgment as to Count I, agreeing that dismissal of the Title VII claim is not proper at this stage of the litigation. The issue of the application of equitable tolling, equitable estoppel, or waiver to the filing limitations period shall go forward as a genuine issue of material fact in dispute. The court will consider each of the remaining counts in turn.

## II

### Discussion

#### A. The § 1981 Claim (Count II)

■ Defendant argues that Plaintiff's § 1981 claim should be dismissed because the Fourth Circuit, following the Supreme Court's decision in *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), has held that discriminatory discharges are not actionable under § 1981. *Williams v. First Union Nat'l Bank*, 920 F.2d 232, 234 (4th Cir. 1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2259, 114 L.Ed.2d 712 (1991). Defendant

argues that disparate treatment based on race that occurs during the employment relationship is similarly not actionable under § 1981 because *Patterson* rejected any claim based on actions which occurred *after* a contract has been formed. *Id.* at 234, 235.

The Civil Rights Act of 1991 (the "Act" or the "1991 Act") explicitly rejected the *Patterson* interpretation of the scope of § 1981 and restored § 1981 protection to the performance and termination of contracts after their formation.[2] In light of this modification, Plaintiff argues that the court should retroactively apply the Act to this case and deny Defendant's Motion to Dismiss Plaintiff's § 1981 claim.

Two courts in this district have previously addressed the issue of retroactive application of the 1991 Act.[3] Both courts found that the 1991 Act should not apply retroactively to a claim brought under Title VII and pending before the court on November 21, 1991, the date of enactment. Thus, plaintiffs were denied leave to amend their complaints to add a demand for trial by jury and claims for compensatory and punitive damages, additional Title VII rights and remedies provided by the 1991 Act.

Both courts also found that the language and legislative history of the Act were unclear and thus turned to legal precedent for

1. The Fourth Circuit recognizes each of these equitable remedies. *See Olson v. Mobil Oil Corp.*, 904 F.2d 198, 200 (4th Cir.1990) (equitable tolling); *English v. Pabst Brewing Co.*, 828 F.2d 1047, 1049 (4th Cir.1987) (equitable estoppel); *Joyner v. Garrett*, 751 F.Supp. 555, 562–63 (E.D.Va.1990) (waiver).

2. In *Patterson*, the Supreme Court construed the following version of § 1981:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981 (1981).

On November 21, 1991, while this case was pending, Congress effectively overruled *Patter-*

*son* with the passage of the Civil Rights Act of 1991, Pub.L. No. 102–166, 105 Stat. 1071 (1991). The 1991 Act redesignates the original § 1981 as subsection 1981(a) and adds the following subsections:

> (b) For purposes of this section, the term "make and enforce contracts" includes the making, *performance*, modification, and *termination* of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.
> (c) The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of state law.

Pub.L. No. 102–166, § 101, 105 Stat. 1071, 1071–72 (1991) (emphasis added).

3. *See Schneider v. Novell, Inc.*, No. 91–1408–A (E.D.Va. Jan. 17, 1992) (Cacheris, C.J.) (the court issued its ruling orally from the bench); *Khandelwal v. Compuadd Corp.*, 780 F.Supp. 1077, 57 Fair Empl.Prac.Cas. (BNA) 1308 (E.D.Va.1992) (Williams, J.).

guidance. Currently, Supreme Court precedent is in conflict concerning whether new legislation should be applied to pending cases.[4] In *Bradley v. Richmond School Bd.*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), the Court held that where controlling law changes during the pendency of a case, "a court is to apply the law at the time it renders its decision, unless doing so would result in manifest injustice or there is a statutory direction or legislative history to the contrary." *Id.* at 711, 94 S.Ct. at 2016. By contrast, in *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988), the Court, citing a long line of cases, stated that retroactivity is not favored in the law and held that legislation should not ordinarily be given retroactive effect unless the language of the statute requires such a result. *Id.* 109 S.Ct. at 471.[5]

Both this court and Judge Williams found the rule expressed in *Bowen* to be the better and more recent rule and followed it in finding that the 1991 Act should not be applied retroactively to Title VII claims pending in their courts at the time of the Act's enactment. Moreover, the Fourth Circuit has indicated a preference for the *Bowen* precedent. In *Leland v. Federal Ins. Adm'r*, 934 F.2d 524, 527–29 (4th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 417, 116 L.Ed.2d 437 (1991), the court thoroughly discusses and follows *Bowen* in holding that recent amendments to the National Flood Insurance Act should not be applied retroactively. A cursory discussion

of whether such a ruling would be warranted under *Bradley* is relegated to a footnote. *Id.* at 528 n. 7. If Plaintiff in the instant case were seeking retroactive application of the Act's amendments to Title VII, the court would simply follow *Bowen* and its own prior ruling to deny Plaintiff's request.[6] The instant case, however, involves a claim under § 1981.

The 1991 Act does not change the original language of § 1981 but merely adds a subsection to clarify the meaning of "to make and enforce contracts." Thus, it can be argued that the Act's amendment to § 1981 was not intended to change the law but only to clarify it and to restore the scope of § 1981 to that originally intended by Congress.[7] There is a line of cases standing for the proposition that in general, where "Congress enacts [a] statute to clarify the Supreme Court's interpretation of previous legislation thereby returning the law to its previous posture," the Act must be applied retroactively. *Ayers v. Allain*, 893 F.2d 732, 754–55 (5th Cir.), *vacated on other grounds*, 914 F.2d 676 (5th Cir.1990) (en banc), *cert. granted on other grounds*, — U.S. —, 111 S.Ct. 1579, 113 L.Ed.2d 644 (1991); *see Mrs. W. v. Tirozzi*, 832 F.2d 748, 755 (2d Cir.1987) ("[t]he 1986 amendment in the present case [the Handicapped Children's Protection Act of 1986] simply codifies a congressional purpose long in place which Congress believed the Supreme Court had misinterpreted" thus plaintiffs could bring suit under

---

**4.** The Supreme Court recognized this conflict in *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 110 S.Ct. 1570, 1576–77, 108 L.Ed.2d 842 (1990).

**5.** In *Bonjorno,* the Supreme Court declined to reconcile these conflicting precedents, finding reconciliation unnecessary because clear congressional intent was found in that case. 110 S.Ct. at 1577. In a concurring opinion, Justice Scalia stated that he would hold that the rule announced in *Bradley* is incorrect and that absent specific indication to the contrary, the operation of nonpenal legislation is prospective. *Id.* 110 S.Ct. at 1579 (Scalia, J., concurring).

**6.** The analysis of the language and legislative history of the 1991 Act and of the conflicting Supreme Court precedents concerning the legal presumption of retroactivity or nonretroactivity has been thoroughly discussed in the *Khandel-*

*wal* opinion, 780 F.Supp. 1077, and in published opinions from other districts. This court will not, therefore, repeat the discussion here, but will instead focus on the distinction presented by the Act's interpretation of § 1981 and on recent indications by the Supreme Court as to its view on the retroactivity issue.

**7.** Of the cases reviewed by the court, the following district courts acknowledged the possibility of this distinction: *Tyree v. Riley*, 783 F.Supp. 877, 878 (D.N.J.1992); *Watkins v. Bessemer State Technical College*, 782 F.Supp. 581, 585 (N.D.Ala.1992); *Maddox v. Norwood Clinic, Inc.*, 783 F.Supp. 582, 586 n. 7 (N.D.Ala.1992); *Stender v. Lucky Stores, Inc.*, 780 F.Supp. 1302, 1305 (N.D.Cal.1992); *Mojica v. Gannett Co.*, 779 F.Supp. 94, 97 (N.D.Ill.1991).

the Act even though the Act was passed one year after the suit was brought); *Bonner v. Arizona Dep't of Corrections,* 714 F.Supp. 420, 422–23 (D.Ariz.1989) (Civil Rights Restoration Act of 1987 applies retroactively); *Leake v. Long Island Jewish Medical Center,* 695 F.Supp. 1414, 1417–18 (E.D.N.Y.1988) ("although the Restoration Act does not include a provision stating that it should be applied retroactively, the use of the terms 'restore' and 'clarify' indicate that Congress did not intend to change the statute; rather it intended to reject the Supreme Court's interpretation" and congressional intent for retroactive application can be inferred), *aff'd,* 869 F.2d 130 (2d Cir.1989).

While the fact that Congress rejected the Supreme Court's interpretation of § 1981 may provide some support for applying the Act's amendment to § 1981 retroactively, it is not necessarily conclusive evidence of congressional intent to apply the statute retroactively. *DeVargas v. Mason & Hanger–Silas Mason Co.,* 911 F.2d 1377, 1385 (10th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 799, 112 L.Ed.2d 860 (1991). And it can be argued that § 1981 does not fall within this category of restorative legislation.[8] The statements of findings and purposes in the Act can be read to reject the restorative legislation argument. These provisions of the Act do not use the term "overrule," but rather refer to "additional protections"[9] and "respond to recent decisions of the Supreme Court by expanding the scope of relevant civil rights statutes...."[10] Thus it can be argued that the Act grants additional substantive remedies to § 1981 and the restorative legislation distinction favoring retroactivity does not apply. *See* Lex K. Larson, *Civil Rights Act of 1991* 39 (1992) ("the likely conclusion is that the presumption against retroactivity has not been rebutted, and that the new expanded Section 1981 coverage will apply only to discriminatory acts occurring after the effective date of the statute").

The question whether the 1991 Act should be applied retroactively to pending cases is clearly one that must be addressed and resolved by the Supreme Court. This court reviewed sixteen cases which decided the issue of retroactivity in the § 1981 context. The courts generally were divided depending on whether their circuit preferred the *Bradley* or *Bowen* presumption;[11] one court applied the restorative legislation distinction to find that the Act should be applied retroactively;[12] and two

---

**8.** Of the cases reviewed by this court, one district court acknowledged the possibility that the Act's amendment to § 1981 falls within this distinctive category, but rejected this argument. The court stated, "Such an argument assumes that the Supreme Court 'misspoke' in *Patterson,* an assumption this court is not willing to make. This court views *Patterson* as defining Congressional intent regarding Section 1981 as the statute then existed. With the passage of the 1991 Act, Congress is now expressing a different intent." *Maddox v. Norwood Clinic, Inc.,* 783 F.Supp. 582, 586 n. 7 (N.D.Ala.1992).

**9.** Pub.L. No. 102–166. § 2(3), 105 Stat. 1071 (1991).

**10.** § 3(4), 105 Stat. at 1071.

**11.** The following cases found that the 1991 Act should not be applied retroactively to pending § 1981 claims:
*Cook v. Foster Forbes Glass,* 783 F.Supp. 1217 (E.D.Mo.1992); *Conerly v. CVN Cos.,* 785 F.Supp. 801 (D.Minn.1992); *Thompson v. Johnson & Johnson Management Information Center,* 783 F.Supp. 893 (D.N.J.1992); *Patterson v. McLean Credit Union,* 784 F.Supp. 268 (M.D.N.C. 1992); *Maddox v. Norwood Clinic, Inc.,* 783 F.Supp. 582 (N.D.Ala.1992); *Doe v. Bd. of County Comm'rs,* 783 F.Supp. 1379 (S.D.Fla.1992); *Simons v. Southwest Petro–Chem, Inc.,* No. 90–2243–V, 1992 WL 25218, 1992 U.S.Dist. LEXIS 1842, 58 Fair Empl.Prac.Cas. (BNA) 78 (D.Kan. Jan. 22, 1992).
The following cases found that the 1991 Act should be applied retroactively to pending § 1981 claims:
*Poston v. Reliable Drug Stores, Inc.,* 783 F.Supp. 1166 (S.D.Ind.1992); *Graham v. Bodine Electric Co.,* 782 F.Supp. 74 (N.D.Ill.1992); *Stender v. Lucky Stores, Inc.,* 780 F.Supp. 1302 (N.D.Cal.1992); *Thakkar v. Provident Nat'l Bank,* No. 90–3907, 1991 WL 274827, 1991 U.S.Dist. LEXIS 18753 (E.D.Pa. Dec. 17, 1991); *Mojica v. Gannett Co.,* 779 F.Supp. 94 (N.D.Ill. 1991).

**12.** *Watkins v. Bessemer State Technical College,* 782 F.Supp. 581 (N.D.Ala.1992).

courts applied the Act retroactively without detailed discussion or reasoning.[13]

The Supreme Court has recently indicated that it may favor retroactive application of the 1991 Act in the § 1981 context.[14] On January 27, 1992, the Supreme Court vacated the decision of the Court of Appeals for the District of Columbia Circuit in *Gersman v. Group Health Ass'n*, 931 F.2d 1565 (D.C.Cir.1991). In *Gersman*, the D.C. Circuit followed *Patterson* in holding that § 1981 does not apply to a claim for a contract termination. 931 F.2d at 1571. *Gersman* was decided May 7, 1991, fully six months before the effective date of the 1991 Act. The Supreme Court said of this decision, "The petition for a writ of certiorari is granted. The judgment is vacated and the case is remanded to the United States Court of Appeals for the District of Columbia Circuit *for further consideration in light of the Civil Rights Act of 1991.*" *Gersman v. Group Health Ass'n*, — U.S. —, 112 S.Ct. 960, 117 L.Ed.2d 127 (1992) (emphasis added).[15]

Although the most likely reason the Supreme Court vacated and remanded the *Gersman* case is that the Court believes that the 1991 Act should be applied retroactively,[16] until the Supreme Court or the Fourth Circuit speaks decisively on this issue, this court is constrained to follow existing Fourth Circuit precedent. As noted above, the Fourth Circuit has most recently indicated its preference for the *Bowen* presumption against retroactive application of legislation. *Leland*, 934 F.2d at 527–29. Moreover, this court could find no cases indicating that the Fourth Circuit has

adopted the *Ayers* distinction for restorative legislation. It appears that the Fourth Circuit simply does not favor retroactive application of legislation. *See Appalachian Power Co. v. Train*, 620 F.2d 1040, 1047 (4th Cir.1980) (retroactive application of a statute is not favored). Accordingly, without further guidance from the Supreme Court or the Fourth Circuit, and with some reluctance, the court finds that the Civil Rights Act of 1991 does not apply retroactively to § 1981 claims pending on the date of the Act's enactment.

Plaintiff asserts that her § 1981 claim is viable even if the 1991 Act is not retroactive. Plaintiff cites no case law in support of this assertion. (Pl.'s Opp'n at 24–25.) In addition, although Plaintiff bases her claim in Count II partially on contract formation, (Complaint ¶ 21), she alleges no facts involving contract formation. Plaintiff's specific factual allegations involve her termination and actions that occurred during her employment. (Complaint ¶¶ 6, 7, 9, 10, 11, 12.) The affidavit filed by Plaintiff similarly does not allege any facts concerning contract formation. (Pl's Opp'n Ex. 1.)

Because Plaintiff does not put forth sufficient evidence of discriminatory contract formation,[17] this court would be inclined to grant Defendant's Motion for Summary Judgment as to Count II. Plaintiff requested leave to amend her Complaint, however, and in the interest of justice pursuant to Fed.R.Civ.P. 15(a), the court finds that Count II should not be dismissed at

---

**13.** *Hendricks v. Clark*, No. CV91–PT–00975–S (N.D.Ala. Jan. 14, 1992); *Saltarikos v. Charter Mfg. Co.*, 782 F.Supp. 420 (E.D.Wis.1992).

**14.** *See Gersman v. Group Health Ass'n*, 931 F.2d 1565 (D.C.Cir.1991), *vacated and remanded*, — U.S. —, 112 S.Ct. 960, 117 L.Ed.2d 127 (1992) (see text for further discussion); *Holland v. First Virginia Banks, Inc.*, 744 F.Supp. 722 (E.D.Va. 1990), *rev'd without opinion*, 937 F.2d 603 (4th Cir.1991), *vacated and remanded*, — U.S. —, 112 S.Ct. 1152, 117 L.Ed.2d 401 (1992) (Supreme Court vacated judgment and remanded to the Fourth Circuit for further consideration in light of 1991 Act). The *Holland* case was reopened in the Fourth Circuit on February 28, 1992. At the

time of this writing, a briefing schedule and oral argument date have not yet been set.

**15.** The *Gersman* case is scheduled for oral argument before the D.C. Circuit on May 12, 1992.

**16.** In *Watkins v. Bessemer State Technical College*, the court also recognized the Court's implication of retroactivity in *Gersman*. 782 F.Supp. 581, 586.

**17.** Because the court has considered matters outside the pleadings in reviewing Count II of Plaintiff's Complaint, the motion shall be treated as one for summary judgment and disposed of as provided in Fed.R.Civ.P. 56. *See* Fed. R.Civ.P. 12(b); *infra* note 18.

this stage of the litigation. Accordingly, the court grants Plaintiff leave to amend her Complaint in order to plead her claim within the proper scope of § 1981 under *Patterson.* Defendant's Motion to Dismiss or for Summary Judgment as to Count II is therefore denied at this time.

## B. *The § 1983 Claim (Count III)*

 Defendant argues that Plaintiff's § 1983 claim must be dismissed because she does not allege a municipal policy, custom, or usage as required by *Monell v. Dep't of Social Serv.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).[18] According to *Monell,* a municipality cannot be held liable solely because it employs a tortfeasor; in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory. *Id.* at 691, 98 S.Ct. at 2036. But local governing bodies can be sued directly under § 1983 where the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted by that body's officers. Local governments can also be sued for constitutional deprivations that are pursuant to governmental custom or usage, even though such a custom has not received formal approval. *Id.* at 690–91, 98 S.Ct. at 2035–36. Plaintiff has made no such allegations of a policy or custom in her Complaint or subsequently filed affidavits and exhibits.

 Defendant acknowledges that Plaintiff can also establish a municipal policy or custom by attributing her deprivation to an official with "final policymaking authority." *City of St. Louis v. Praprotnik,* 485 U.S. 112, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988). Defendant claims, however, that Plaintiff does not allege any action taken by a person with final policymaking authority which caused her deprivation and Plaintiff's Complaint must therefore be dismissed. Plaintiff argues that by raising the discrimination issues with her supervisor and the County Manager, (Pl.'s Opp'n Ex. 12), the alleged discriminatory practices are attributable to the County Manager such that the County is liable under § 1983. Specifically, Plaintiff claims that the County is liable because the County Manager "took no action to remedy" Plaintiff's complaints. (Pl.'s Opp'n at 26.) To support her assertion, Plaintiff cites a district court case decided before *Praprotnik. Young v. Sedgwick County, Kan.,* 660 F.Supp. 918, 922 (D.Kan.1987). The guiding principles established in *Praprotnik,* however, must control.

In *Praprotnik,* the court reiterated that the identification of policymaking officials is a question of state law. 108 S.Ct. at 924 (citing *Pembaur v. Cincinnati,* 475 U.S. 469, 483, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452 (1986) (plurality opinion)). Plaintiff points to Va.Code § 15.1–7.2 to support her contention that the County Manager had final policymaking authority in personnel decisions for the Arlington County Department of Human Services. Section 15.1–7.2 provides, in part, that "[g]rievability, including the question of access to the procedure, shall be determined by the chief administrative officer of the locality or a de-

**18.** Because the court has considered matters outside the pleadings in reviewing Count III of Plaintiff's Complaint, the motion shall be treated as one for summary judgment and disposed of as provided in Fed.R.Civ.P. 56. *See* Fed.R.Civ.P. 12(b).

Summary judgment should be granted where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). In determining whether this showing has been made, the court must assess the evidence in the light most favorable to the party opposing the motion. *Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir.1979).

When the non-moving party will bear the burden of proof at trial, and the party seeking summary judgment has made a *prima facie* demonstration that the non-moving party cannot prevail, then the non-moving party must come forth with evidence demonstrating a genuine issue of material fact. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir. 1985). The non-moving party must produce more than "merely colorable" evidence; he must produce "significantly probative" evidence. *Abcor Corp. v. AM Int'l, Inc.,* 916 F.2d 924, 930 (4th Cir.1990); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 253, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986) ("[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff").

partment head authorized by the chief administrative officer to decide the issue of grievability...." Va.Code Ann. § 15.1–7.2(A) (Michie 1989). Plaintiff does not allege sufficiently probative facts, however, to establish whether the County Manager is indeed the chief administrative officer charged with grievance procedures and other personnel decisions for the department that employed Plaintiff or whether the chief administrative officer has delegated this authority to a department head. Plaintiff merely claims that the County Manager "took no action to remedy" her complaints. (Pl.'s Opp'n at 26.) It is not at all clear who made the actual decisions regarding Plaintiff's employment.

In *Praprotnik*, the Court reiterated that the challenged action must have been taken pursuant to a policy adopted by the official responsible under state law for making final policy in that area of the locality's business. 108 S.Ct. at 924 (citing *Pembaur v. Cincinnati*, 475 U.S. 469, 482–83, and n. 12, 106 S.Ct. 1292, 1300, and n. 12, 89 L.Ed.2d 452 (1986) (plurality opinion)). In other words, Plaintiff must establish that the person with final policymaking authority caused the claimed deprivation. Plaintiff "says nothing about the actions of those whom the law established as the makers of municipal policy in matters of personnel administration." *Praprotnik*, 108 S.Ct. at 926.

■ Without specifying who caused Plaintiff's claimed deprivation of rights, e.g., which official terminated her employment, Plaintiff does not put forth "significantly probative" evidence sufficient to overcome a motion for summary judgment as to Count III. *Abcor Corp. v. AM Int'l, Inc.*, 916 F.2d 924, 930 (4th Cir.1990). For example, if the chief administrative officer had retained final policymaking authority but delegated the discretion to hire and fire employees to another official, and that official exercised its discretion in an unconstitutional manner, municipal liability could be based only on the actions of the chief administrative officer, not the discretionary

official. *Praprotnik*, 108 S.Ct. at 927. Moreover, simply going along with discretionary decisions made by one's subordinates is not a delegation to them of the authority to make final policy.[19] *Id.* And the "mere failure to investigate the basis of a subordinate's discretionary decisions does not amount to a delegation of policymaking authority." *Id.*

Because Plaintiff does not put forth sufficient evidence of any action taken by any person with final policymaking authority that caused her claimed deprivation of rights, the court would be inclined to grant Defendant's Motion for Summary Judgment as to Count III. Plaintiff requested leave to amend her Complaint, however, and in the interest of justice pursuant to Fed.R.Civ.P. 15(a), the court finds that Count III should not be dismissed on this basis at this stage of the litigation. Accordingly, the court grants Plaintiff leave to amend her Complaint in order to properly plead her § 1983 claim in light of the principles established by the Supreme Court in *Monell* and *Praprotnik*. Defendant's Motion to Dismiss or for Summary Judgment as to Count III is therefore denied on this basis.

■ Defendant also argues that Plaintiff's claims for punitive damages should be dismissed because a municipality is not liable for punitive damages under § 1983. The court agrees. In *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271, 101 S.Ct. 2748, 2762, 69 L.Ed.2d 616 (1981), the Supreme Court held that a municipality is immune from punitive damages under § 1983. Thus, the claim for punitive damages against Arlington County must be dismissed. Accordingly, Defendant's Motion to Dismiss or for Summary Judgment as to Plaintiff's § 1983 claim for punitive damages against Arlington County is granted.

---

**19.** It would be different, however, if Plaintiff alleged facts establishing that a "particular decision by a subordinate was cast in the form of a policy statement and expressly approved by the supervising policymaker" or that a "series of decisions by a subordinate official manifested a 'custom or usage' of which the supervisor must have been aware." *Praprotnik*, 108 S.Ct. at 927.