**RIDGEWAY COAL COMPANY, INC., et al., Plaintiffs,**

v.

**FMC CORPORATION, et al., Defendants.**

Civ. A. No. 83–2366.

United States District Court, S.D. West Virginia, Charleston Division.

Aug. 6, 1985.

James M. Cagle, Charles R. Garten, Charleston, W.Va., for plaintiffs.

Charles Q. Gage, M. Blane Michael and Karen Speidel Rodgers, Jackson, Kelly, Holt & O'Farrell, Charleston, W.Va., for defendants.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

This is an action which was originally filed in the Circuit Court of Boone County, West Virginia. The action was removed to this Court by the Defendants on July 27, 1984. Although a United Mine Workers Local and several of its members had joined the present Plaintiffs in bringing this suit, the Union and its members have settled their differences with the Defendants and, consequently, have been dismissed from the case. The remaining Plaintiffs are Ridgeway Coal Company, Inc. and Harold J. Henry, President and Chief Executive Officer of the Plaintiff corporation. The original Defendants were FMC Corporation, Bill Curry, an employee

of FMC, William A. McMinn, Vice President of FMC, and Richard Roe, an unknown employee of FMC. When the Plaintiffs filed their amended complaint, Roe was dropped as a Defendant. Defendant William A. McMinn has never been served with process. Thus, only FMC and Curry remain as Defendants. These two Defendants now move the Court to dismiss the amended complaint under *Rule* 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

## I. *Background*

FMC, the Defendant corporation, is the owner of certain coal properties in Boone County, West Virginia. The particular property of the Defendant involved in this litigation is known as the "Orgas property." Ridgeway Coal Company, Inc., the Plaintiff corporation, is a West Virginia corporation engaged in the business of coal mining. Most of its business is in Boone County. During the summer of 1982, Ridgeway, through its President, Henry, approached FMC and made known to FMC its interest in subleasing the Orgas property. The initial discussions between the parties culminated in a letter dated July 12, 1982, from Dale R. Silbernagel, an employee of FMC, to the Plaintiff Henry. In the letter, Silbernagel set forth several conditions which Ridgeway would have to satisfy before FMC would be willing to enter into negotiations regarding a sublease. The conditions were directed toward Ridgeway's ability to effectively mine and sell the coal and the company's general financial condition.

The Plaintiffs (Ridgeway and Henry) allege that they met the conditions spelled out in the July 12, 1982, letter. In their amended complaint, the Plaintiffs further allege that FMC "failed and refused to enter into good faith discussions or negotiations with the Plaintiffs, or to have a good faith, meaningful discussion with the Plaintiffs concerning the Orgas property." Incorporating the Silbernagel letter into their complaint, the Plaintiffs claim the letter created a contractual relationship between themselves and FMC. Having met the let-

ter's conditions, the Plaintiffs view as a contractual breach the failure of FMC to either lease or negotiate with them.

Plaintiffs also seek relief under a civil conspiracy theory. They claim that FMC, Defendant Bill Curry and William McMinn "did combine and conspire together to maliciously, wrongfully and illegally deprive the Plaintiffs of their contractual rights and interests in the Orgas property." In particular the Plaintiffs charge the Defendants with frustrating the Plaintiffs' attempt to sublease the Orgas property. They allege, without elaboration, that the conspiracy was carried out by means of meetings, phone calls and conversations between the Defendants and others.

In their motion, the Defendants have assigned grounds attacking both of the Plaintiffs' theories. First, the Defendants argue that their discussions with the Plaintiffs never resulted in a contractual relationship. At most, contend the Defendants, there was only an agreement to negotiate. They submit that such an agreement is not legally binding. Second, the Defendants argue that a corporation cannot conspire with its own employees. Because only FMC and its employee, Bill Curry, are before the Court as Defendants, the Defendants contend that the Plaintiffs' complaint fails to state a cause of action under a civil conspiracy theory.

## II. *Discussion*

As an initial matter, the Court notes its agreement with the Plaintiffs on the standard of review applicable to a motion to dismiss under *Rule* 12(b)(6). That standard is weighted heavily in the favor of the Plaintiffs. "In appraising the sufficiency of the complaint," the Supreme Court stated in *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957), "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Furthermore, in reviewing the Plaintiffs' complaint, a court must assume as true any allegations set forth in support of the Plaintiffs' theo-

ries. *Johnson v. Mueller*, 415 F.2d 354 (4th Cir.1969); *see also Vance v. Borden-kircher*, 533 F.Supp. 429 (N.D.W.Va.1982); and *Brock & Davis Co. v. Charleston National Bank*, 443 F.Supp. 1175 (S.D.W.Va. 1977).

Although a court's attention must be limited to the complaint in ruling on a *Rule* 12(b)(6) motion, it must be noted that a complaint can comprise more than numbered paragraphs of allegations. *Rule* 10(c) of the Federal Rules of Civil Procedure specifically provides that "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." The Plaintiffs in their amended complaint incorporated by reference the July 12, 1982, letter from Dale Silbernagel and attached it is an exhibit to their complaint. Therefore, that letter may be considered in conjunction with the amended complaint as the Plaintiffs' theories are tested.

A. *The Plaintiffs' Contract Theory.* The Plaintiffs allege in their amended complaint that the Defendant corporation contracted to sublease the Orgas property to the Plaintiffs, or at a minimum agreed to conduct good faith discussions or negotiations with the Plaintiffs. As support for their contentions, they incorporate the Silbernagel letter into their complaint. This letter, which is attached to this Memorandum Opinion and Order as an appendix, would seem to be the mainstay of the Plaintiff's contract theory.

■ It is recognized that parties can agree to agree in the future. To do so, however, it is necessary that the terms to be agreed upon in the future be substantially drawn from the initial agreement. *Frank Horton & Co. v. Cook Electric Co.*, 356 F.2d 485 (7th Cir.) *cert. denied* 384 U.S. 952, 86 S.Ct. 1572, 16 L.Ed.2d 548 (1966). The terms must be determined "independent of a party's mere 'wish, will and de-sire ...' either by virtue of the agreement itself or by commercial practice or other useage or custom." *U.S. v. Orr Construction Co.*, 560 F.2d 765, 769 (7th Cir.1977) (quoting 1 *Corbin on Contracts*, § 95, at 402). The letter Plaintiffs present as the sole basis for their contractual theory does not begin to supply the terms of any possible sublease which may have been entered into between Ridgeway and FMC. The letter contains conditions, but these conditions were prerequisites to negotiation; for the most part they would not have carried over into any sublease which resulted from the negotiations.

The Plaintiffs alternatively claim that FMC contracted to negotiate with the Plaintiffs in good faith. Although the letter does speak of the willingness of FMC to enter into negotiations with the Plaintiffs, it does not create a contractual relationship between the parties. The letter is nothing more than an agreement to negotiate. As such, it is nothing more than negotiations itself. *Wharf Restaurant, Inc. v. Port of Seattle*, 24 Wash.App. 601, 605 P.2d 334 (1979). As the court said in *Neff v. World Publishing Co.*, 349 F.2d 235 (8th Cir.1965), "[p]reliminary negotiations between parties who have in mind the execution of a formal written contract cannot themselves be construed as constituting a contract."

■ The primary failing point of the contract claimed by the Plaintiffs, whether it be to sublease or merely to negotiate, is the inability of this Court to enforce the contract or to fashion any other remedy. When terms are so vague and indefinite that there is no basis or standard for deciding whether the agreement has been kept or broken, or to fashion a remedy, and no means by which such terms may be made certain, then there is no enforceable contract. *Candid Productions, Inc. v. International Skating Union*, 530 F.Supp. 1330 (S.D.N.Y.1982).[1]

---

1. Professor Corbin's words are quite pertinent to the instant case:

    "A court cannot enforce a contract unless it can determine what it is. It is not enough that the parties think they have made a con-tract; they must have expressed their intentions in a manner that is capable of understanding. It is not enough that they have actually agreed; if their expressions when interpreted in the light of accompanying factors

This Court cannot write a sublease between the parties. There is nothing to indicate what the terms of such a lease would be. How long would the lease run? What would be the consideration? What type of covenants would attach? The Court cannot write an agreement for the parties that they themselves would not have written. Neither can the Court enforce any promise to negotiate. "[A]n agreement to enter into negotiations in the future cannot be enforced because the court has no means to determine what sort of contract the negotiations would have produced." *Weitzman v. Steinberg*, 638 S.W.2d 171, 175 (Tex.App.1982). The only possible exception to this principle is where the parties have agreed to basic terms, leaving only nonessential elements subject to negotiations. *Eckles v. Sharman*, 548 F.2d 905, 909 (10th Cir.1977). In this instance, however, not even the basic terms have been agreed upon. Much has been left to do. There is no enforceable contract.

In addition to enforcement of the alleged contract, Plaintiffs seek compensatory damages. The Plaintiffs cannot recover. For the reasons above mentioned, the amount of any compensatory damages to be given to the Plaintiffs would be pure conjecture. It is well settled that a party may not recover speculative damages. *Sisler v. Hawkins*, 158 W.Va. 1034, 217 S.E.2d 60 (1975).

■ Although the Plaintiffs do not specifically mention the doctrine of promissory estoppel, they make much of the detriment they suffered in fulfilling the conditions of the Silbernagle letter. The Plaintiffs may have detrimentally relied upon the letter, but such reliance must be justified. *Wharf Restaurant, Inc. v. Port of Seattle*, 24 Wash.App. 601, 605 P.2d 334

(1979). It is important to note that Mr. Silbernagel concluded his letter by saying:

"You are also advised that FMC Corporation reserves the right, at any time, to negotiate with any and all other interested persons as to the subleasing or any other legal disposition of FMC's interests in the Orgas property and to finalize and conclude on any such arrangement that is satisfactory to FMC."

Hence, the Plaintiffs were put on notice that even if the conditions were met, they still might not get the sublease. The conditions must be viewed as entrance requirements to nonexclusive negotiations. Any reliance placed upon their subsequent satisfaction was at the Plaintiffs' own risk.

**B.** *The Plaintiffs' Civil Conspiracy Theory.* The Plaintiffs allege that FMC and its employees, Bill Curry and William A. McMinn conspired to illegally deprive the Plaintiffs of their contractual rights and interests in the Orgas property. McMinn was never served with the amended complaint and is not now before the Court. The Plaintiffs make mention in their amended complaint of "others" whom the Defendants associated with during the course of the alleged conspiracy, but paragraph 13 of said complaint accuses only FMC, Curry and McMinn of conspiracy.

■ It is a well-settled principle of law that civil conspiracy requires concerted action by two or more persons or entities. *Dixon v. American Industrial Leasing Co.*, 162 W.Va. 832, 834, 253 S.E.2d 150, 152 (1979). Because of the requirement of more than one entity for actionable civil conspiracy, several courts have ruled that a corporation cannot conspire with its employees.[2] A corporation can only act through its employees. To hold that a corporation can conspire with its employees

---

and circumstances are not such that a court can determine what the terms of the agreement are." 1 *Corbin on Contracts,* § 95 (2d Ed. 1963).

**2.** *Bellamy v. Mason's Stores, Inc.,* 508 F.2d 504 (4th Cir.1974); *Greenville Publishing Co., Inc. v. Dailey Reflector, Inc.,* 496 F.2d 391 (4th Cir. 1974); *Dombrowski v. Dowling,* 459 F.2d 190

(7th Cir.1972); *Nelson Radio & Supply Co. v. Motorola, Inc.,* 200 F.2d 911 (5th Cir.1952) *cert. denied* 345 U.S. 925, 73 S.Ct. 783, 97 L.Ed. 1356 (1953); *Eggleston v. Prince Edward Rescue Squad,* 569 F.Supp. 1344 (E.D.Va.1983); *Burch v. Snider,* 461 F.Supp. 598 (D.Md.1978); *Lattimore v. Loews Theatres, Inc.,* 410 F.Supp. 1397 (M.D.N.C.1975).

would be to effectively hold that a corporation could conspire with itself. Any acts undertaken by Curry with respect to the Orgas property would have been in the course of his employment with FMC. His acts are the acts of FMC. Being but an agent of the corporation, he cannot be said to have conspired with it.[3]

The Plaintiffs cite two cases in support of their civil conspiracy theory. They submit *Transportation Co. v. Standard Oil Co.*, 50 W.Va. 611, 40 S.E. 591 (1902), for the proposition that a corporation can sue and be sued for torts such as civil conspiracy. The proposition is quite correct, but it does not help the Plaintiffs' conspiracy theory. The case does not address at all the question of whether a corporation can conspire with its employees. The other case, *Schoedler v. Motometer Gauge and Equipment Corp.*, 15 N.E.2d 958, 134 Ohio St. 78 (1938), appears to be the sole case which the Plaintiffs can point to in support of their position. The *Schoedler* court cited no authority in holding that officers of a corporation could be joined with the corporation in a petition alleging conspiracy to defame. The case goes against the weight of the authority and, indeed, is quite prior in time to most cases giving thoughtful consideration to the question.

### III. *Conclusion*

Having carefully reviewed the Plaintiffs' amended complaint and the legal arguments of counsel, the Court holds that the Plaintiffs could prove no state of facts which would entitle them to relief under the legal theories advanced. Accordingly, it is ORDERED that the Defendants' motion to dismiss the amended complaint is hereby granted.

---

**3.** The only exception to the above rule is when an agent, employee or officer of a corporation has an independent personal stake in achieving the corporation's illegal objective. *Greenville Publishing Co., Inc. v. Daily Reflector, Inc.*, 496 F.2d 391 (4th Cir.1974). In *Greenville Publishing,* an officer of a newspaper company was sued, together with the newspaper and other officers, for conspiring to put the plaintiff newspaper out of business in violation of the Sher-

The Clerk is directed to send a certified copy of this Memorandum Opinion and Order to counsel of record.

man Act. The officer was found to have a substantial interest in another newspaper which would profit if the plaintiff newspaper collapsed. Accordingly, the conspiracy theory was found to be sufficient as to him. The Defendant Curry is not alleged to have any interest in the matters involved in this controversy other than those which concern his employment with FMC. Therefore, Curry does not fall under this exception.