**Reynard S. BOYCE, Jr., Plaintiff,**

v.

**FLEET FINANCE, INC., Defendant.**

**Civ. A. No. 2:92cv170.**

United States District Court,
E.D. Virginia,
Norfolk Division.

July 7, 1992.

As Corrected July 15, 1992.

Reynard S. Boyce, Jr., pro se.

Thomas R. Bagby, Cathie Shattuck, Epstein, Becker & Green, P.C., Washington, D.C., for defendant.

## CORRECTED ORDER

CLARKE, District Judge.

This matter is before the Court on a Motion to for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons stated below, the Court grants the motion and dismisses plaintiff's claims pursuant to 42 U.S.C. §§ 1981 and 2000e–5(f)(3), as well as his claims of intentional infliction of emotional distress. In addition, the Court orders plaintiff, within twenty (20) days, to show cause why his claims pursuant to 42 U.S.C. § 1985 should not be dismissed.

## FACTS

Plaintiff is a former employee of Fleet Industrial Loan Company. On June 28, 1991, plaintiff telephoned the Department of Human Resources for Fleet Finance, Inc., Fleet Industrial's parent corporation, to report charges of harassment. Complaint para. 10 (filed Feb. 27, 1992). On the same day he was terminated for "disrespecting a customer and that his temperament was not in unison with the conduct that should be displayed." *Id.* at para. 15.

After several conversations with company officials, plaintiff's termination was rescinded and he was transferred from the Norfolk, Virginia office to the Cherry Hill, New Jersey office and instructed to report to work by July 5, 1991. He was advised that if he did not report he would be consid-

ered voluntarily terminated. *Id.* para. 21. Plaintiff reported on July 29, 1991 and was terminated on August 28, 1991. *Id.* paras. 23, 26.

On September 13, 1991, plaintiff filed with the Equal Employment Opportunity Commission (hereinafter "EEOC") a charge of discrimination against Fleet Industrial Loan Company. Plaintiff alleged that on June 29, 1991 and July 1, 1991, he reported to three different company officials that he was being subjected to racially discriminatory treatment and was contemplating a lawsuit. He further alleged that in retaliation for this complaint he was transferred to Cherry Hill, New Jersey.

On November 27, 1991 the EEOC issued an opinion from its branch office in Norfolk, Virginia. Determination (November 27, 1991). In a somewhat confusing opinion, the Commission stated that plaintiff claimed racial discrimination "in that he was reported to Respondent officials of being racially discriminated against and considering a law suit." *Id.* at 1. The Commission found that plaintiff had informed respondents of the discrimination, and of his intent to sue, in response to being terminated. *Id.* at 1. It found that plaintiff was initially terminated, and later transferred, because of unprofessional conduct toward a customer and abusive conduct toward a co-worker. *Id.* at 1. It further found that four white employees had been disciplined for similar conduct. *Id.* at 1–2. The Commission advised plaintiff that he could file an action in the federal district court within ninety (90) days, and that if he failed to do so his right to sue would be lost. *Id.* at 2. Plaintiff claims that he received the right to sue letter on November 27, 1991. Complaint at para. 31.

On February 27, 1992, plaintiff filed a complaint with this Court. Plaintiff alleges that he was harassed, transferred and terminated in retaliation for making an EEOC protest with his company and because of his sex and race. He claims defendant's actions violated 42 U.S.C. §§ 1981, 1985, and 2000e–5(f)(3) and that he

was subjected to intentional infliction of emotional distress.

## DISCUSSION

■ Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed.R.Civ.P. 56(c). To avoid summary judgment, the nonmoving party must introduce evidence to create an issue of material fact on "an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A verified complaint based on personal knowledge serves as the equivalent of an opposing affidavit for the purposes of summary judgment. *Williams v. Griffin,* 952 F.2d 820, 823 (4th Cir.1991).

### *Section 1981*

Section 1981 of Title 42 of the United States Code provides:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full extent and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

In *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), the Supreme Court held that the right to make contracts under section 1981:

extends only to the formation of a contract, but not to problems that may arise later from the conditions of continuing employment. The statute prohibits, when based on race, the refusal to enter into a contract with someone, as well as the offer to make a contract only on discriminatory terms. But the right to

make contracts does not extend, as a matter of either logic of semantics, to conduct by the employer after the contract relation has been established, including breach of the terms of the contract or the imposition of discriminatory working conditions. Such postformation conduct does not involve the right to make a contract, but rather implicated the performance of established contract obligations and the conditions of continuing employment, matters more naturally governed by state contract law and Title VII.

*Id.* at 176–77, 109 S.Ct. at 2372–73.

■ In *Williams v. First Union National Bank,* 920 F.2d 232 (4th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2259, 114 L.Ed.2d 712 (1991), a black employee alleged retaliation resulting from his filing an EEOC claim. The Court, citing *Patterson,* expressed its reluctance to stretch section 1981 to protect conduct already covered by Title VII and held that plaintiff's claim was not actionable under section 1981.

The Civil Rights Act of 1991, effective November 21, 1991, overturns *Patterson* and provides that section 1981 will apply to post-formation conduct. Section 101 of the Act amends 42 U.S.C. section 1981 by adding subsections (b) and (c). Subsection (b) provides:

> For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

The retroactivity of the 1991 Act has been a topic of heated debate.[1] A large part of the confusion on this subject stems from two conflicting presumptions created by the Supreme Court. In *Bradley v. Richmond School Board,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), petition-

ers sought attorney fees under a provision awarding a reasonable fee to the prevailing party in a school desegregation case. The Supreme Court anchored its holding "on the principle that a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Id.* at 711, 94 S.Ct. at 2016. In determining whether a manifest injustice might result from retroactive application, the Court centered upon: "(a) the nature and identity of the parties, (b) the nature of their rights, and (c) the nature of the impact of the change of law upon the parties." *Id.* at 717, 94 S.Ct. at 2019. The Court noted that respondent was a publicly funded governmental entity, respondent would not lose a matured or unconditional right by the application of provision, and that retroactive application of the law would not affect the substantive obligations of the parties. *Id.* at 718–21, 94 S.Ct. at 2019–21. The Court found that retroactive application would not result in a manifest injustice.

On the other hand, in *Bowen v. Georgetown University Hospital,* 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988), respondents, a group of hospitals, challenged a retroactive "wage index" promulgated by the Department of Health and Human Services. Applying the index, the Secretary of Health and Human Services ordered respondents to refund certain Medicare payments. The Court stated that "congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Id.* at 208, 109 S.Ct. at 471. The Court found that Congress had not authorized retroactive rulemaking and held that the index was invalid. *Id.* at 215–16, 109 S.Ct. at 475–76.

In addressing the apparent tension between *Bradley* and *Bowen,*[2] most courts

---

1. For a complete list of cases dealing with this issue *see Fray v. Omaha World Herald Co.,* 960 F.2d 1370, 1383–84 (8th Cir.1992).

2. In *Kaiser Aluminum Chem. Corp. v. Bonjorno,* 494 U.S. 827, 837, 110 S.Ct. 1570, 1577, 108

L.Ed.2d 842 (1990), the Court recognized the tension between *Bradley* and *Bowen* but declined to resolve the conflict.

have chosen one rule or the other as the "better rule." *See Khandelwal v. Compuadd Corp,* 780 F.Supp. 1077, 1081 (E.D.Va.1992). Two district courts in this circuit, in discussing the Civil Rights Act of 1991, have opted for the *Bowen* presumption against retroactivity. *Khandelwal,* 780 F.Supp. at 1081; *Rowson v. County of Arlington,* 786 F.Supp. 555, 560 (E.D.Va. 1992). Similarly, in *Leland v. Federal Insurance Administrator,* 934 F.2d 524, 528 (4th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 417, 116 L.Ed.2d 437 (1991), the Fourth Circuit indicated a preference for the *Bowen* presumption.[3]

One court in this district has attempted to resolve this apparent conflict, finding the reasoning in *Robinson v. Davis Memorial,* 790 F.Supp. 325, 58 Fair.Empl.Prac. Cas. 1084 (D.D.C.1992), persuasive. *Jaekel v. Equifax Marketing Decision Systems, Inc.,* 797 F.Supp. 486, 490–91 (E.D.Va. 1992). In *Robinson,* the court, stating "it is not the role of an inferior court to 'pick one' as the 'better rule,'" found that *Bradley* presumption for retroactive application "is only applicable when a statute does not operate to deprive a party of a vested or mature right." *Robinson,* 790 F.Supp. at 329. *See Davis v. Omitowoju,* 883 F.2d 1155, 1171 (3rd Cir.1989); *Tyree v. Riley,* 783 F.Supp. 877, 892 (D.N.J.1992). This

interpretation would be in accord with the general jurisprudential principle that laws that do not effect vested substantive rights but relate only to remedies or procedure may be applied retrospectively. 82 C.J.S. *Statutes* §§ 415–418 (1953). *See Ohlinger v. United States,* 135 F.Supp. 40, 42 (S.D.Idaho 1955). The Court finds that section 1981(b) affects the substantive rights of the parties by imposing new liabilities and that under either approach taken by courts in this district the *Bowen* presumption governs this case.[4]

As stated above, under the *Bowen* presumption, "congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result."[5] *Bowen,* 488 U.S. at 208, 109 S.Ct. at 471. Section 402(a), the general statement of the Act's effective date, provides no guidance on the issue of retroactivity, vaguely stating:

[e]xcept as otherwise provided, this Act and the amendments made by this Act shall take effect upon enactment.[6]

Several courts holding in favor of retroactive application have noted that sections 109(c) and 402(b) of the Civil Rights Act of 1991 would be meaningless and redundant if the Act were not intended to be applied retroactively.[7] *See Stender v. Lucky*

---

**3.** The Court applied the *Bowen* rule in the body of the case. However, in a footnote the Court applied *Bradley* and noted that the result would have been the same under either rule. *Leland,* 934 F.2d at 528 n. 7.

**4.** This case is distinguishable from *Jaekel,* in which the court determined that section 102 of the Act was retroactive. Section 102 of the Act, governing the availability of compensatory damages, punitive damages, and trial by jury in cases brought under sections 706 or 717 of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e–5, 2000e–16), does not affect the substantive rights of the parties. *But see* Lex K. Larson, *Civil Rights Act of 1991* 38–40 (1991) (finding that applying the punitive damage provisions of section 102 retroactively would raise serious constitutional questions). Section 101, on the other hand, which is at issue in this case, imposes liability for post-formation conduct and thereby affects the parties' rights and obligations. *See* 42 U.S.C. § 1981(b). The *Bowen* presumption clearly applies to this case.

**5.** The Court notes that in general, where "a statute's language is unambiguous, the court's

task of statutory interpretation is at an end unless enforcement of the literal language would contravene a clearly expressed legislative intention." *In re Forfeiture Hearing as to Caplin & Drysdale,* 837 F.2d 637, 641 (4th Cir.1988), *aff'd,* 491 U.S. 617, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989).

**6.** *See Jaekel,* 797 F.Supp. at 489, for a detailed discussion of the ambiguities of section 402. Briefly, the opinion states that "effective date" may mean the date upon which a law's provisions begin to operate or the date on which a party governed by a new law must begin to conform his conduct to the law's requirements.

**7.** Section 109(c) of the Civil Rights Act of 1991 states:

The amendments made by this section shall not apply with respect to conduct occurring before the date of the enactment of this Act. Section 402(b) of the Act provides:

Notwithstanding any other provision of this Act, nothing in this Act shall apply to any disparate impact case for which a complaint

*Stores,* 766 F.Supp. 830 (N.D.Ca.1992); *Sanders v. Culinary Workers Union,* 783 F.Supp. 531 (D.Nev.1992); *Robinson,* 790 F.Supp. at 327–28, 58 Fair.Empl.Prac.Cas. at 1087. Other courts, however, have rejected this interpretation, noting that these sections were intended to affect the holdings in *EEOC v. Arabian Amer. Oil Co.,* —— U.S. ——, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991), and *Wards Cove Packing Co. v. Atonio,* 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989).[8] *See Fray v. Omaha World Herald Co.,* 960 F.2d 1370, 1375–1377 (8th Cir.1992); *Khandelwal,* 780 F.Supp. at 1079. The Court finds the reasoning in *Khandelwal* and *Fray* persuasive; the Court holds that the language of the 1991 Civil Rights Act provides little, if any, guidance on the issue of retroactivity.

Likewise, the legislative history of the 1991 Act provides little, if any, guidance. President Bush vetoed the 1990 version of the Act, stating as one of his reasons the "unfair retroactivity rules." President's Message to the Senate Returning Without Approval the Civil Rights Act of 1990, 26 Weekly Comp.Pres.Doc. 1632, 1634 (Oct. 22, 1990). The 1991 Act changed many of the provisions requiring retroactive application; Congress, however, was divided on the issue. Senator Danforth, the Act's Republican Sponsor, stated that "the original cosponsors, who are the authors of the effective date provision, do not intend the bill to have any retroactive effect or application." 137 Cong.Rec. S15483 (daily ed. Oct. 30, 1991). Senator Kennedy, on the other hand, stated, "it will be up to the courts to determine the extent to which the bill will apply to cases and claims that are pending at the date of enactment." 137 Cong.Rec. S15485 (daily ed. Oct. 30, 1991). *See Fray,* 960 F.2d at 1375–77; *Khandelwal,* 780 F.Supp. at 1079–80; *Doe v. Bd. of Comm'rs, Palm Beach County,* 783 F.Supp. 1379, 1383 (S.D.Fla.1992). The Court finds that neither the 1991 Act's language nor its legislative history are sufficient to overcome the *Bowen* presumption. The Court finds that section 101 of the 1991 Act (42 U.S.C. § 1981(b) and (c)) does not apply retroactively.

■ Plaintiff's claims of discriminatory harassment, transfer, and retaliation clearly stem from post-formation conduct. These claims are not actionable under section 1981 because all acts complained of occurred prior to the 1991 Act's effective date;[9] the Court dismisses these claims.[10]

---

was filed before March 1, 1975 and for which an initial decision was rendered after October 30, 1983.

**8.** The Court notes that some courts have held that a statute which supersedes a Supreme Court interpretation of an existing law is presumed to act retroactively. *Jaekel,* 797 F.Supp. at 490 n. 9 (citing *Kennedy v. Fritsch,* 796 F.Supp. 306 (N.D.Ill.1992), and *Ayers v. Allen,* 893 F.2d 732, 754–55 (5th Cir.1990), *vacated on other grounds,* 914 F.2d 676 (5th Cir.1990), *cert. granted,* —— U.S. ——, 111 S.Ct. 1579, 113 L.Ed.2d 644 (1991)). Congress may have felt sections 109(c) and 402(b) were necessary to rebut this presumption. This point is far from clear, however; some members of Congress apparently thought that they were expanding existing rights and not merely responding to the Supreme Court's ruling in *Patterson. Rowson,* 786 F.Supp. at 557–60. The Court notes that the presumption is apparently not followed in this circuit. *Id.*

**9.** The Court notes that almost all extant cases addressing the retroactivity of the 1991 Act involve cases filed prior to the Act's effective date, whereas this case was filed after the effective date. This fact is of no consequence. A retro-spective or retroactive law is one "which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new liability in respect to transactions or considerations already past." *Sturges v. Carter,* 114 U.S. 511, 519, 5 S.Ct. 1014, 1017–18, 29 L.Ed. 240 (1885). *See Farish v. Courion Industries, Inc.,* 722 F.2d 74, 77 (4th Cir.1983); *Lohf v. Casey,* 330 F.Supp. 356, 359 (D.Colo.1971), *aff'd,* 466 F.2d 618 (1972); *Ohlinger,* 135 F.Supp. at 42. If the Court were to apply section 101 of the 1991 Act (42 U.S.C. § 1981(b) and (c)) to this case merely because it was filed after the effective date of the Act, the Court would be applying the law to actions and considerations already past. *See Jaekel,* 797 F.Supp. at 488–90 (finding that the applicability of the 1991 Act is not dependent upon the filing date).

**10.** The Court notes that if the *Bradley* presumption had been applied the result would have been no different. Unlike in *Bradley,* defendant in this case is a private party. Further, unlike in *Bradley,* the 1991 Act works to create a new duty and liability under section 1981 that did not exist under previous law. *Bradley,* 416 U.S. at 718, 94 S.Ct. at 2019–20. The Court finds that

## Section 1985 [11]

Section 1985(3) of title 42 of the United States Code provides, in part:

> If two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws ... if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

■■■ The conspiracy requirement of section 1985 is not satisfied by a corporation and its officers or employees acting within the scope of their employment. *Rennick v. Champion Int'l. Corp.*, 690 F.Supp. 603, 604 (S.D.Ohio 1987); *Ridgeway Coal Co. v. FMC Corp.*, 616 F.Supp. 404, 408–09 (D.C.W.Va.1985). The only exception to the rule that an employee, agent, or officer cannot conspire with a corporation is when the employee, agent, or officer has an independent stake in achieving the corporation's illegal objective. *Ridgeway*, 616 F.Supp. at 409 n. 3.

■■■ The Court also notes that section 1985(3) may not be invoked to redress violations of Title VII. *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 373–78, 99 S.Ct. 2345, 2349–52, 60 L.Ed.2d 957 (1979). In this case, plaintiff has named a corporation as the sole defendant and alleged that its employees conspired to deprive him of his liberty. Plaintiff's claims that he was harassed, transferred and terminated for making an EEOC protest and because of his sex and race are all actionable under Title VII. Accordingly, the Court orders plaintiff to show cause within twenty (20) days why his claims pursuant to section 1985(3) should not be dismissed.[12]

### Title VII (42 U.S.C. § 2000e et seq.)

■■■ Section 2000e–5(a) of title 42 of the United States Code empowers the EEOC "to prevent any person from engaging in any unlawful employment practice as set forth in section 2000e–2 or 2000e–3 of this title." As a prerequisite to filing a claim in a federal district court under these sections, an employee must first file a charge with the EEOC. *King v. Seaboard Coast Line R.R. Co.*, 538 F.2d 581 (1976); 42 U.S.C. §§ 2000e–5(b), 2000e–5(e). A suit filed in district court "may encompass only the 'discrimination stated in the charge itself or developed in the course of a reasonable investigation of the charge.'" *Id.* at 583. A suit must be filed within ninety (90) days of an employee's actual receipt of a right to sue letter. *Harvey v. City of New*

---

applying the 1991 Act retroactively would result in "manifest injustice." *See Doe*, 783 F.Supp. at 1383–85; *Tyree*, 783 F.Supp. at 892. *See also Leland*, 934 F.2d at 528 n. 7 (finding that applying amendments to FEMA retroactively would distort preexisting rights of the parties and thereby result in "manifest injustice").

The Court recognizes that remedying discrimination in the workplace is a matter of great public concern. *See Jaekel*, 797 F.Supp. at 493 n. 11. However, this fact alone does not require the retroactive application of the Act or the application of the *Bradley* presumption. To so hold would be to create an exception to the interpretation of *Bradley* and *Bowen* adopted in *Robinson* and *Jaekel*. Further, the Court notes that *Bradley* involved school desegregation, certainly a matter of great public concern, yet the Supreme Court analyzed the facts to see if a "manifest injustice" would result.

**11.** Plaintiff did not specifically cite section 1985 in his complaint. However in paragraph 20 of his complaint, plaintiff alleges that "there existed a conspiracy on the part of Branch President Shirley Hudson, Loan Officer Jackie Reager and Branch Vice President Robin Hampton to remove Boyce ..." Complaint para. 20 (filed Feb. 27, 1992). Further, plaintiff alleges jurisdiction pursuant to 28 U.S.C. § 1343, which grants district courts jurisdiction over cases arising under section 1985.

**12.** A Court possesses inherent power to enter summary judgment *sua sponte*. The exercise of this power, however, is contingent on giving the losing party notice that it must come forward and defend its claim. *U.S. Dev. Corp. v. Peoples Fed. Sav. & Loan Ass'n*, 873 F.2d 731, 735–36 (4th Cir.1989).

*Bern Police Department,* 813 F.2d 652 (4th Cir.1987) (claim filed ninety-one days after actual receipt of right to sue letter is barred); 42 U.S.C. § 2000e–5(f)(1).

Plaintiff alleges that he was harassed, transferred and finally terminated in retaliation for making an EEOC protest with his company and because of his sex and race. Plaintiff never claimed in his EEOC charge that his final discharge was discriminatory, however. Nor did he allege sexual discrimination. His sole complaint was that he was racially discriminated against "in that he was reported to Respondent officials of being racially discriminated against and considering a law suit" and that he was transferred in retaliation for making a Title VII protest. Determination at 1. These claims were investigated by the EEOC in the course of a reasonable inquiry; these are the only claims plaintiff can assert in federal court.

 Even if plaintiff were able to assert all claims of discrimination, however, his claims would be barred because he failed to file his claim within ninety days of receiving a right to sue letter. Plaintiff contends he received a right to sue letter on November 27, 1991. He filed this action on February 27, 1991—ninety two days after he received his right to sue letter.[13] There are no facts supporting equitable tolling of the ninety day filing period. The Court dismisses plaintiff's claims under Title VII.[14]

### Intentional Infliction of Emotional Distress

Section 1367(a) of title 28 of the United States Code provides:

> Except as provided in subsections (b) and (c) or as expressly provided by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve

**13.** For purposes of computing the ninety day limitation period the first day is omitted and the last day counted. *Prophet v. Armco Steel, Inc.,* 575 F.2d 579, 580 n. 1 (5th Cir.1978).

**14.** Defendant also contends that this Court should dismiss plaintiff's claim under Title VII because he has not suffered any cognizable injury. Section 102 of the Civil Rights Act of 1991, however, awards plaintiffs compensatory and punitive damages for violations of 42 U.S.C. § 2000e–5. Plaintiffs contend that this section does not apply retroactively. However, the Court in *Jaekel* found that section 102 does not affect the vested rights of the parties or impose new liabilities and held that the section applied retroactively, applying the *Bradley* presumption. The Court will not rule on this claim.

In addition, defendant claims that summary judgment should be granted because plaintiff did not name it in his EEOC claim, but instead named a subsidiary company. The naming requirement, however, is subject to equitable considerations. *Mayo v. Questech,* 727 F.Supp. 1007, 1010 (E.D.Va.1989). *See Nicol v. Imagematrix, Inc.,* 767 F.Supp. 744, 751 (E.D.Va.1991). Individuals unnamed in an EEOC charge civil actions may be sued in civil actions "(i) where there is either a 'sufficient identity of interests' between the named and unnamed parties or (ii) where the parties are considered 'substantially

identical' entities." *Mayo,* 727 F.Supp. at 1010 (citing *Sedlacek v. Hatch,* 752 F.2d 333 (8th Cir.1985) (corporation and its subsidiary partnership held to be single employer)). Construing plaintiff's *pro se* complaint liberally, *see Cruz v. Beto,* 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972), the Court finds that plaintiff may be attempting to claim that defendant and its Norfolk and Cherry Hill subsidiaries are substantially identical entities with an identity of interests. Defendant has not produced affidavits to rebut this allegation; it has not met its burden of proof for purposes of summary judgment. The Court will not grant summary judgment on this issue at this time.

Finally, defendant contends that its subsidiary has fewer than fifteen employees and that even were the subsidiary to be named, plaintiff's claim would be barred from bringing his claim in federal court by the Title VII jurisdictional requirement of fifteen employees. However, a corporation and its subsidiaries may be considered a "single employer" for purposes of the Title VII jurisdictional requirement. *See Armbruster v. Quinn,* 711 F.2d 1332, 1335–39 (6th Cir.1983). As noted above, defendant has not produced any affidavits to rebut plaintiff's allegation that defendant and its subsidiaries are a single employer; it has not met its burden of proof for purposes of summary judgment. The Court will not grant summary judgment on this issue at this time.

the joinder or intervention of additional parties.

Section 1367(c) of title 28 of the United States Code provides:

The district courts may decline to exercise supplemental jurisdiction over a claim under section (a) if—

(c) the district court has dismissed all claims over which it has original jurisdiction ...

The Court has dismissed all claims under section 1981 and Title VII. Further, the Court has ordered plaintiff to show cause within twenty (20) days why his claims pursuant to 42 U.S.C. § 1985 should not be dismissed. Considering the early stage of this case, the Court will decline to exercise supplemental jurisdiction if plaintiff fails to show cause why his claims pursuant to 42 U.S.C. § 1985(c) should not be dismissed.

### CONCLUSION

For the reasons stated above, the Court DISMISSES plaintiff's section 1981 and Title VII claims. The Court ORDERS plaintiff to show cause within twenty (20) days why his section 1985(c) claim should not be dismissed. The Court ADVISES plaintiff that should he fail to show cause within the allotted time, the Court will dismiss his 1985(c) claim and decline to exercise jurisdiction over his state claim of intentional infliction of emotional distress.

The Clerk is ORDERED to send a copy of this Order to plaintiff and counsel for defendant.

IT IS SO ORDERED.