Yvonne STRINGFIELD, Plaintiff,

v.

**CHRISTOPHER NEWPORT UNI-VERSITY, and The Board of Visitors, Defendants.**

No. Civ.A.4:99CV26.

United States District Court,
E.D. Virginia,
Newport News Division.

Sept. 14, 1999.

Yvonne Stringfield, pro se.

Ashley L. Taylor, Jr., Ronald C. Forehand, William E. Thro, Office of the Attor-

ney General, Richmond, VA, for defendants.

## OPINION AND ORDER

FRIEDMAN, District Judge.

On July 27, 1999, the defendants filed a Motion to Dismiss, and on July 29, 1999, the defendants filed a Motion for Summary Judgment. This case is scheduled for a jury trial on September 21, 1999. For the reasons stated below, the defendants' Motion for Summary Judgment is **GRANTED,** and the defendants' Motion to Dismiss is **DENIED,** as it is moot in light of this Court's ruling on the Motion for Summary Judgment.

### I. Factual Background

The evidence before the Court, taken in the light most favorable to the plaintiff, establishes the following.[1] The plaintiff, and African–American woman, was employed by Christopher Newport University (CNU) from August of 1988 until June of 1996 as an instructional faculty member in the Department of Nursing. While employed by CNU, plaintiff was a probationary faculty member on the tenure track. Under the procedures in place at CNU during the time of plaintiff's employment, probationary faculty members were reviewed for tenure during their sixth academic year. Probationary employees who failed to achieve tenure were offered one additional year of employment. At plaintiff's request, her service during the 1991–92 academic year was not part of her probationary period, and she was reviewed for tenure during the 1994–95 academic year. As part of this review process, the Peer Group, the Dean, the Faculty Review Committee, and the Provost recommended that tenure be denied. On March 29, 1995, after learning of this recommendation, plaintiff asked permission to withdraw her candidacy for tenure, stating that, "I realize the key issue in my tenure consideration was a lack of postdoctoral courses in nursing that should have been taken in

order to be a more valuable candidate for tenure." CNU granted plaintiff's request on March 31, 1995.

On May 5, 1995, plaintiff and CNU entered into an agreement concerning plaintiff's future employment, and under the terms of the agreement, plaintiff's service as a probationary employee ended on May 14, 1995. Plaintiff was employed as a restricted faculty member (non-tenure track) for the 1995–96 academic year. According to the agreement, CNU would offer plaintiff a contract as probationary employee for the 1996–97 academic year, and this contract would specify when she would be reviewed for tenure. Plaintiff signed a contract as a restricted faculty member for the 1995–96 academic year.

Dr. Arlene Stepnick, the Chairperson of plaintiff's department, was aware of the arrangement between CNU and plaintiff. Stepnick informed her spouse, Dr. Robert Durel of the arrangement. Dr. Durel proceeded to ask the Faculty Senate to pass a resolution expressing concern over CNU's decision to deviate from the normal tenure process, and the Senate passed such a resolution on December 12, 1995. On May 24, 1996, CNU offered plaintiff a contract for the 1996–97 academic year, and on June 7, 1996, plaintiff declined this offer and voluntarily submitted her resignation. On June 24, 1996, plaintiff filed a charge of race discrimination with the EEOC. Plaintiff did not file a state law claim with the Virginia Council on Human Rights.

In summary, plaintiff protests the following: 1) comments made during December of 1989 by the Department Chairperson about her pursuit of a doctorate in Education; 2) her teaching assignments in 1989; 3) the refusal to reschedule search committee meetings to accommodate plaintiff's schedule in the Spring of 1990; 4) the fact that all faculty members in the Department of Nursing had to work during a holiday break in December of 1990 as part of the accreditation process; 5) she disliked the wording of one section of her

---

**1.** The facts as stated are essentially adopted from the Statement of Undisputed Facts in

the jointly submitted Proposed Final Pretrial Order.

1989–90 evaluation; 6) the Department Chairperson expressed an opinion that the Plaintiff received a grant because of her race in April of 1992; 7) the Faculty Senate did not provide her with full funding for a presentation in April of 1992; 8) she was reprimanded for not rescheduling a class in October of 1992; 9) she felt that in February of 1994, people did not have high regard for her first article; 10) she was not placed on the Search Committee for new faculty in the Department of Nursing in February of 1995; 11) she was not recommended for tenure in January of 1995; 12) she was admonished at a departmental meeting on December 13, 1995 for not meeting with a student who had a scheduled appointment; and 13) the CNU Faculty Senate passed a resolution on December 12, 1995 protesting the preferential treatment that she had received. (*See* Def.'s Exh. O, ¶¶ 11–18).

## II. Analysis

### A. Standard of Review

Summary judgment is appropriate when it is apparent from the entire record, viewed in light most favorable to the nonmoving party, that there are no genuine disputes of material fact. *See, e.g., Clark v. Alexander,* 85 F.3d 146, 150 (4th Cir. 1996); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *United States v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). When a court declines to grant summary judgment, sufficient evidence must exist favoring the nonmoving party which would allow a reasonable jury to return a verdict for that party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ A properly supported motion for summary judgment may not be defeated by "the mere existence of some alleged factual dispute between the parties." *Id.* at 247–48, 106 S.Ct. 2505. The requirement is that there are no genuine issues of material fact. *See id.* Entry of summary judgment is mandated "against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. In a discrimination case, a court must take special care when considering a summary judgment motion because motive is often the critical issue. However, summary judgment is still appropriate if the plaintiff cannot prevail as a matter of law. *Evans v. Technologies Applications & Serv. Co.,* 80 F.3d 954, 958–59 (4th Cir. 1996).

■ In addition, the Court is instructed to leniently construe documents filed pro se. At the time plaintiff filed her complaint with the EEOC, she was not represented by counsel. Plaintiff has no legal background. Courts are instructed to liberally interpret charges of discrimination resulting from such circumstances. *See generally, Alvarado v. Board of Trustees,* 848 F.2d 457, 460 (4th Cir.1988) ("Title VII does not require procedural exactness from lay complainants: EEOC charges must be construed with utmost liberality since they are made by those unschooled in the technicalities of formal pleading") (quoting *Kaplan v. Int'l Alliance of Theatrical & Stage Emp.,* 525 F.2d 1354, 1359 (9th Cir.1975)).

### B. Time Bar

■ The appropriate limitations period for filing a Title VII claim with the EEOC of an employment practice proscribed by Virginia law is 300 days from the allegedly discriminatory action. 42 U.S.C. § 2000e–5(e); *Tinsley v. First Union Nat'l Bank,* 155 F.3d 435, 442 (4th Cir.1998).[2] This

---

**2.** Title VII's 300–day statutory limit, as opposed to the 180–day limit, applies to claims arising in Virginia because Virginia has a qualifying "deferral agency"—the Virginia Council on Human Rights. *Tinsley,* 155 F.3d at 442. In actuality, a plaintiff, like the plaintiff in this case, who first files a charge with the EEOC rather than with the Virginia Council on Human Rights, should do so within 240 days of the discriminatory action. Filing within 240 days ensures that, in the event the

Court has held plaintiffs to the strict timing requirements of Title VII. *See, e.g., Boyce v. Fleet Finance, Inc.,* 802 F.Supp. 1404, 1411 (E.D.Va.1992) (Clarke, J.) (dismissing Title VII claims where complaint filed ninety-two days after receipt of right-to-sue notice (two days late)). It is undisputed that plaintiff filed her initial complaint with the EEOC on June 24, 1996. (Proposed Final Pretrial Order at 3, ¶ 21).

■ Defendants assert that many of the events upon which plaintiff bases her claims occurred outside of the limitations period described above. As such, defendants assert that all of plaintiff's claims regarding alleged conduct before August 29, 1995 (300 days before June 24, 1996) are time barred. Ordinarily, a claim based upon allegedly discriminatory actions occurring outside of the limitations period is time-barred. Such actions may form the basis for a timely claim, however, if they are part of "continuing violation." To qualify as a continuing violation, the Fourth Circuit has stated that the alleged incidents of discrimination must constitute "a series of separate but related acts" such that they are "manifested in a continuing violation." *Jenkins v. Home Ins. Co.,* 635 F.2d 310, 312 (4th Cir.1980) (per curiam). Moreover, "there must be a 'present violation'" within the statutory period. *Hill v. AT & T Techs, Inc.,* 731 F.2d 175, 180 (4th Cir.1984) (citing *Woodard v. Lehman,* 717 F.2d 909, 914–15 (4th Cir.1983)).

In *Williams v. Enterprise Leasing Co.,* 911 F.Supp. 988 (E.D.Va.1995) (Doumar, J.), this Court adopted the standard of *Berry v. Board of Supervisors of Louisiana State University,* 715 F.2d 971 (5th Cir.1983), for the continuing violation doctrine. This test involves the consideration of three factors: 1) whether the alleged acts involve the same type of discrimination; 2) whether the alleged acts are frequent; and 3) whether the alleged acts "have a degree of permanence which would trigger an employee's awareness and duty

to assert his or her rights." *Williams,* 911 F.Supp. at 996 (citing *Berry,* 715 F.2d at 981); *see also Demuren v. Old Dominion University,* 33 F.Supp.2d 469, 478–79 (E.D.Va.1999) (Smith, J.). The third factor has been considered the most important and requires plaintiff to prove, at the very least, that she "failed to perceive the alleged discriminatory animus causing the claimed injury prior to the statutory period, and that such recognition would not reasonably have occurred until a point in time within the statutory period." *Williams,* 911 F.Supp. at 997. This Court in *Williams,* stated how this third factor may serve essentially to undo a plaintiff's continuing violation claim:

> "[Plaintiff] has admitted that he believed, at every turn, that he was being discriminated against. A knowing plaintiff has an obligation to file promptly or lose his claim. This can be distinguished from a plaintiff who is unable to appreciate that he is being discriminated against until he has lived through a series of acts and is thereby able to perceive the overall discriminatory pattern."

*Id.* (quoting *Sabree v. United Brotherhood of Carpenters and Joiners,* 921 F.2d 396, 402 (1st Cir.1990).)

■ Several factors, including the third *Berry* factor, prove fatal to plaintiff's claim that the doctrine of continuing violations should apply. Plaintiff has not satisfied the first two factors of the *Berry* test and has failed to demonstrate the prerequisite that "the defendant's alleged actions constituted a pattern or practice of discrimination." *Demuren,* 33 F.Supp.2d at 478. The alleged acts, based on the claims as set forth in plaintiff's Complaint and her Interrogatory answers, are not acts of the same type. As in *Demuren,* many of plaintiff's alleged incident occurred several years apart do not constitute a pattern or practice of discrimination. *See id.* The

charge is referred to the Virginia Council on Human Rights and the Council takes the full 60 days available to it to review the charge,

*see* 42 U.S.C. § 2000e–5(c), the charge will come back to the EEOC within the 300–day limit. *Tinsley,* 155 F.3d at 439.

alleged incidents are unrelated and involve actions or inaction by different individuals concerning incidents as varied as scheduling, publications, evaluations, and funding. (*See* Def.'s Exh. O at 11–17).[3] Such unrelated claims do not amount to a pattern or practice of discrimination.

The third *Berry* factor is also fatal to the plaintiff's claim that the doctrine of continuing violations should apply. Plaintiff admits that she made complaints to the CNU Affirmative Action/Equal Employment Opportunity Officer as early as 1995. (*See* Def.'s Exh. O at 8). In a memorandum dated April 13, 1992 and addressed to Dr. V. Purtle, Dean of the School of Social Science and Professional Studies, plaintiff stated, "I believe the incidents I have experienced have been unfair, based on my race, and are blatant attempts to undermine my future at CNC as well as my reputation and credibility." (Plaintiff's Exh. H at 5). In a memorandum dated November 23, 1992 and addressed to Dr. R. Summerville, Provost, plaintiff stated, "I have written letters and memoranda in the past regarding the treatment I have received in this department.... At this point I can only wonder how I will be treated during the evaluation process this January." (Plaintiff's Exh. I at 2). In a memorandum dated February 15, 1995 and addressed to the Faculty Review Committee and Dr. R. Summerville, Provost, plaintiff stated, "A pattern has developed with my evaluations over the years ... I believe it was done based on factors not necessarily related to my activities." (Def.'s Exh. D at 4). Although the exact date that plaintiff's awareness crystallized is not known, it is clear that at least 3 years prior to plaintiff's first EEOC charge, plaintiff knew that the separate and distinct acts of discrimination "established a visible pattern of [allegedly] dis-

criminatory mistreatment." *Williams*, 911 F.Supp. at 997. In light of the Fourth Circuit's adherence to the *Berry* factors and the essential nature of the third factor, any claims under Title VII related to acts occurring prior to August 29, 1995, are barred by the statute of limitations. The Court therefore **GRANTS** defendants' motion for summary judgment with respect to claims under Title VII for alleged acts of discrimination by defendants occurring prior to August 29, 1995.

## C. Failure to State a Title VII Claim

Plaintiff's remaining post-August 29, 1995 claims that are not time-barred consist of the following: 1) being admonished during a departmental meeting for not being present to meet with a student who had scheduled an appointment; and 2) the passage of a resolution by the CNU Faculty Senate protesting plaintiff's preferential treatment. Even assuming the truth of these allegations, plaintiff has failed to state a claim under Title VII. The proper scope of inquiry in a claim under Title VII is whether there has been "discrimination" with respect to "personnel actions affecting (covered) employees or applicants for employment...." 42 U.S.C. § 2000e–16(a); *Page v. Bolger*, 645 F.2d 227, 233 (4th Cir.1981). Provisions of Title VII have consistently focused on the issue of whether there has been discrimination in "ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating." *Id.* While there is no specific test for defining what constitutes an "ultimate employment decision," the court in *Page* recognized that "there are many interlocutory or mediate decisions having no immediate effect upon employment conditions which were not intended to fall within the direct proscriptions of

---

**3.** One could assert, although plaintiff did not do so in this case, that failure to grant tenure is a continuing violation because of the continuing effect that the lack of tenured status, like past discriminatory compensation, has on a plaintiff's current salary. However, in *Hill* and *Woodard*, the Fourth Circuit implicitly rejected such an argument. Instead it ad-

hered to the general rule from *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977), that a past discriminatory act is not a continuing violation merely because it has some present effect. *See also Demuren*, 33 F.Supp.2d at 477 n. 9. Additionally, plaintiff in this case voluntarily resigned.

... Title VII." *Id.* In *Page*, the court held that steps in the process of making final decisions, such as those to promote, are considered to be mediate decisions and are therefore not covered by Title VII. *See id.*

This Court in *Chappell v. School Board of the City of Virginia Beach*, 12 F.Supp.2d 509 (E.D.Va.1998) (Prince, J.), held that a plaintiff's claims, similar to those alleged here, did not establish a prima facie case requirement for "adverse employment action." In *Chappell* this Court granted the defendant's motion for summary judgment, stating that the plaintiff's claims, including those alleging negative job evaluations, negative remarks made at staff meetings, and accusations of improperly computing overtime and taking unauthorized sick leave did not rise to the level of "ultimate employment decisions." *See id.* at 514–16. This Court concluded that the law does not go so far as to allow claims for "misunderstandings, personality conflicts, job performance evaluations, and purely administrative matters" to stand. *Id.* at 516.

"Every employment decision that arguably has a negative impact on an individual does not rise to the level of an adverse employment action." *Thurston v. Louisa County School Board*, 1999 WL 195676, *3 (W.D.Va.1999) (slip op.) (granting defendant's motion for summary judgment where plaintiff alleged that his supervisor told him that he would be sorry for filing a lawsuit; referred to plaintiff as a "trouble maker;" ordered plaintiff to remain off school grounds when not working; and did not offer plaintiff overtime opportunities). The court in *Howze v. Virginia Polytechnic*, 901 F.Supp. 1091 (W.D.Va.1995), granted the defendant's motion to dismiss with regard to plaintiff's claims of retaliation on the basis of the tenure process, as the claims did not state any "adverse employment action." *See id.* at 1096–97. The court held that only the "final decision" concerning the granting or denying of tenure constituted the "ultimate act." *See id.* at 1097.

■ Neither of plaintiff's remaining allegations constitute "ultimate employment decisions," and therefore, plaintiff has failed to state a claim under Title VII. As stated by this Court in *Chappell*, mere admonishment and criticism of job performance at a departmental meeting does not rise to the level of an ultimate employment decision and is inconsequential as a matter of law. The resolution of the Faculty Senate does not constitute an ultimate employment decision for several reasons. Firstly, the recommendation of the Faculty Senate following the meeting was to merely reaffirm CNU's existing policy with regard to the granting of tenure. While this decision was made in light of a reference to plaintiff's probationary contract that was in transgression of the existing policy, the decision of the Faculty Senate served as a request for future adherence to the written policy in the Handbook. Plaintiff was still offered a contract for the 1996–97 academic year, several months after the passing of this resolution and in direct contravention of it. In addition, decisions of the Faculty Senate are not the final decision in the tenure process, and in accordance with the decision in *Howze*, such mediate decisions may not constitute ultimate employment decisions. At most, the Faculty Senate may make a recommendation to the Board of Visitors or the Administration, as stated in the *Christopher Newport University Faculty Handbook*, which notes the overall authority of the Board of Visitors or the Administration. Plaintiff's remaining claims that do comply with the statute of limitations are merely "interlocutory or mediate decisions having no immediate effect on employment conditions" and were not intended to fall under the coverage of Title VII. *See Page*, 645 F.2d at 233. Defendants' Motion for Summary Judgment as to plaintiff's remaining claims not barred by the statute of limitations is **GRANTED.**

## D. Motion to Dismiss for Failure to Exhaust Administrative Remedies

In light of the Court's decision with regard to defendants' Motion for Summary

Judgment, Defendants' Motion to Dismiss is *DENIED* as moot.

### III. Conclusion

Based on the foregoing, Defendants' Motion for Summary Judgment is **GRANTED,** and plaintiff's claims are **DISMISSED.** Defendants' Motion to Dismiss is **DENIED,** as it is moot in light of the Court's decision granting the Motion for Summary Judgment.

Ms. Stringfield is advised that she may appeal from this final order by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510. Said written notice must be received by the Clerk within thirty (30) days from the date of this order.

The Clerk is **REQUESTED** to send a copy of this Opinion and Order to plaintiff and counsel for the defendant.

It is so **ORDERED.**